CAROL A. STERLING, PLAINTIFF-APPELLANT AND CROSS-RESPONDENT, v. ANTHONY P.F. STERLING, DEFENDANT-RESPONDENT AND CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued September 13, 1983—Decided November 2, 1983.

548

Before Judges BOTTER, PRESSLER and O'BRIEN.

*Richard L. Amster* argued the cause for appellant and cross-respondent (*Amster & Levin,* attorneys; *Howard P. Danzig* on the brief).

*Jerome C. Eisenberg* argued the cause for respondent and cross-appellant (*Clapp & Eisenberg,* attorneys; *Jerome C. Eisenberg* on the brief).

The opinion of the court was delivered by

O'BRIEN, J.A.D.

Plaintiff-wife appeals from several orders emanating from her motion to modify alimony and child support. The principal issue concerns construction of the parties' agreement.

The parties were married on January 22, 1963. Two children were born of the marriage: Daniel, born October 15, 1963 and Anthony, December 9, 1969. Plaintiff graduated from Hunter College in 1966 and began working as a teacher in September of that year. At that time defendant was in his last year of medical school.

Plaintiff continued teaching until June 1968 when defendant was drafted into the Navy for a two-year period, having just completed his internship. In the fall of 1970, while defendant was serving his residency in a New York hospital, the parties bought a home in Oakland, New Jersey. Plaintiff worked at the same hospital as a data collector from 1972 to 1974.

Marital discord developed while defendant was in service. Plaintiff began to suffer from emotional problems which we need not detail here, except to note that to the extent they persist, they are relevant to her needs and earning capacity.

The parties were divorced by judgment dated March 4, 1975, which incorporated their agreement as to alimony and child support. Defendant agreed to pay $100 per week support for each of the two children and $150 per week alimony the first year, to

increase to $175 in the second year and $200 in the third year, plus a cost-of-living adjustment. Paragraph 14 of the agreement contained the following provision:

> Both parties agree that neither will apply to this Court for a modification of this agreement before February 1, 1978. It is further understood that the support provided for in the third year, as outlined above, will continue thereafter until such time as the parties modify it by agreement or an application is made to the court for modification. In this regard, defendant agrees to provide plaintiff as of February 1, 1978 with a statement as to his current earnings and further agrees to provide plaintiff with a statement of earnings every six months thereafter, upon request of plaintiff. (See addendum.)

The addendum to paragraph 14 reads:

> In addition, commencing with the filing by defendant of his 1977 Federal Income Tax Return he shall for each year that he files such a return deliver at the time of filing an exact copy thereof to plaintiff.

On March 18. 1981 plaintiff moved for an increase in alimony and child support. The trial judge, in an opinion reported at 180 *N.J.Super.* 569 (Ch.Div.1981), stated the issue as "the resolution of the time frame within which a standard of living is to be defined, wherein the parties, by agreement, contemplate a 'standard' higher than that actually enjoyed during the marriage." He distinguished this case from the "standard of living formerly shared" referred to in *Lepis v. Lepis,* 83 *N.J.* 139, 152 (1980), and concluded that the agreement took this case out of the *Lepis* criteria. (Plaintiff did make a *"Lepis* application" on March 24, 1982.) Finally he construed the language of paragraph 14 of the agreement as requiring him to ascertain the parties' standard of living as of February 21, 1978. We disagree and reverse.

The fact that the agreement precluded modification applications for the first three years in no way supports the conclusion that it mandated that such an application be made immediately after passage of that three-year period. In fact, the requirement that defendant supply plaintiff with a statement of his earnings every six months after February 1, 1978, and with his income tax returns every year subsequent to his 1977 return, militates against that conclusion.

At oral argument both parties agreed that very little relevant evidence could be offered at this time to assist the court in interpreting the agreement with respect to the issue at hand.

From the terms of the agreement we conclude that the three year-period was simply a respite to enable defendant to establish himself financially in the medical profession. He was only a fledgling physician at the time of the divorce in 1975. While working for other physicians, after completion of his residency, he earned $35,000 in 1975, $42,000 in 1976 and $55,000 in 1977. Undoubtedly, a higher income was anticipated following his early years as a practicing orthopedic surgeon. He opened his own office in mid-1978. His income for that year was over $92,000. In 1979 he earned $174,051; in 1980, $167,227, and in 1981, $260,000.

Factually this case has many of the ingredients contemplated in the concept of reimbursement alimony discussed in *Mahoney v. Mahoney*, 91 *N.J.* 488 (1982). Similar reasons may have prompted the parties to draft their agreement in a manner that would reflect plaintiff's acceptance of a reduced standard of living during defendant's completion of his medical training and internship, looking toward an enhanced standard of living in the future.

Plaintiff contends that without her salary as a teacher it would have been impossible for defendant to have maintained a family while completing his medical training. She found it physically demanding to teach and raise a child at the same time. She got up early, fed her baby, took him by subway to her mother's home and then walked four blocks to school. She reversed this procedure in the evening, returning home after a full day's work, taking care of the child and cooking for the family. She contended that she sacrificed her intention to continue her studies in graduate school and contributed time, money and energy to help defendant through his internship and

residency. However, the trial court found all this a marginal contribution.

The clear language of the agreement required a moratorium during the first three years, after which the support would continue at the third year level, with cost of living adjustments, "until such time as the parties modify it by agreement or an application is made to the court for modification." The parties apparently did not agree to a modification. In fact, on May 17, 1978, the court entered an order directing defendant to comply with the support provisions of the judgment and fixing arrearages then owed by him. Defendant's motion to reduce child support and terminate alimony as of February 1, 1978 was denied by that order. Defendant's appeal from that order was dismissed on December 18, 1978. Plaintiff chose to apply for modification in March 1981.

The trial court's suggestion that plaintiff waited until defendant's income maximized, with the hope of fully participating in his future earnings and success, to which she marginally contributed, seems highly speculative. Plaintiff's modification motion was made before defendant's 1980 income tax return was due. There was no reason for plaintiff to believe that by the end of 1980 defendant had reached the pinnacle of his earnings. It is clear that the parties intended to defer fixing permanent alimony and child support until defendant became established and, in any event, for at least three years. Defendant could have reapplied for modification after the order of May 17, 1978, at a time when he felt he was established economically as contemplated by the agreement. Plaintiff was provided with the tools necessary to monitor defendant's income not only on February 1, 1978, but every six months thereafter. This would seem unnecessary if February 21, 1978 was the date upon which the applicable standard of living was to be fixed.

The case is remanded to the trial court to redetermine the issue after considering all relevant factors, including the income

and needs of the parties as of the date of plaintiff's application for modification. Further discovery may be permitted. Upon hearing, the court shall also consider plaintiff's health as it affects her needs and ability to earn, as well as defendant's remarriage and new obligations. *See Bartok v. Bartok,* 52 *N.J.Super.* 266 (App.Div.1958); *Weiner v. Weiner,* 120 *N.J.Super.* 36, 40 (Ch.Div.1972); *Turner v. Turner,* 158 *N.J.Super.* 313, 319 (Ch.Div.1978); Hymerling, "Commentary On *Lepis v. Lepis:* A Practitioner's Guide To Recent Changes In The Law Of Alimony And Child Support In New Jersey," 12 *Rutgers L.J.* 1, 23–24 (1980). The award is to be made retroactive to March 18, 1981, the date of the application.

The court should further inquire into the support of Daniel since he apparently no longer resides with plaintiff. He is just short of 20 years of age and may well be emancipated. (See paragraph 11 of the divorce judgment, which provides that upon the emancipation of Daniel, the support of Anthony shall increase.) If the court concludes that plaintiff has an added expense in maintaining housing because of Daniel's occasional visits with her, then the court should consider the annual expense of providing such housing in fixing the alimony payable to plaintiff.

To the extent that the court reduced plaintiff's counsel fee because of what it perceived as an improper delay in filing for modification, the court is directed to reconsider its award. We see no reason to penalize plaintiff's attorney for such delay.

Defendant urges on his cross-appeal that the trial judge erred in failing to make an appropriate adjustment in child support by a retroactive abatement for the period when Daniel was attending college and did not live with plaintiff. This issue can be considered by the trial judge on remand.

Reversed and remanded. This court does not retain jurisdiction.