632 A.2d 857

WILLIAM WEBER, PLAINTIFF–APPELLANT, v. BARBARA
WEBER, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Submitted October 6, 1993—Decided November 5, 1993.

Before Judges KING, ARNOLD M. STEIN and ARIEL A. RODRÍGUEZ.

*James W. Kennedy,* attorney for appellant (*Mr. Kennedy,* on the brief).

*Picco Mack Herbert Kennedy Jaffe & Yoskin,* attorneys for respondent (*James P. Manahan,* of counsel and on the brief).

The opinion of the court was delivered by

KING, P.J.A.D.

This is an appeal from an order awarding permanent alimony of $700 a month to Barbara Weber (Barbara), the ex-wife of William Weber (William). On this appeal William claims that the judge erred in three respects:

1. Failing to apply the *Lepis* guidelines.
2. Refusing to terminate alimony.

3. Denying a plenary hearing.

We find no error and affirm.

I

This case involves the right of a former wife to receive continuing alimony. On June 3, 1986 a final judgment of divorce was entered. The marriage had lasted 28 years. At the time of the divorce, Barbara was nearly age 50. She was employed as a full-time legal secretary with an income of about $17,000. William was age 52 at the time of divorce. He was an insurance agent with an income of about $48,000. As of 1991, Barbara was employed as a legal secretary, with an income of about $25,000. William had since remarried and moved to Florida. He was employed as a sales representative for an insurance agency with earnings of about $43,400.

A property settlement agreement dated April 8, 1986 was incorporated into the final judgment of divorce. The agreement provided, in relevant part:

(1) ALIMONY: Commencing immediately, the husband shall be obligated to pay alimony to the wife in the sum of $1,000 per month due and payable on the first of each and every month. Said alimony obligation shall continue until the first happening of any of the following events:

A. Wife's remarriage;

B. Wife commences and continues residing with a male unrelated to her on a full-time basis in avoidance of marriage;

C. Wife's death;

D. Husband's death;

E. 73 months from the date alimony commences.

In the event the wife has not remarried or commenced and continued cohabitation as defined above nor died, nor has the husband died, then and in that event, if the wife feels she should be entitled to further alimony past the 73–month period, *then she shall be entitled to make an application to the appropriate Court for a further determination to be made as to what if any alimony should be payable by the husband to the wife after the 73rd month.* The court shall make the determination at that time based on the financial circumstances of the parties at that time including their respective incomes, ability to pay and needs.

In no event shall the alimony obligation exceed $1,000 per month. [Emphasis supplied.]

William contends, and Barbara agrees, that he has paid each of the 73 monthly payments of $1,000 due under the terms of the property settlement agreement on time.

The property settlement agreement also provided that during the 73–month period during which William was required to pay alimony he was to maintain a life insurance policy in the "approximate amount" of $73,000 for the benefit of Barbara. The value of this insurance was to decrease by $1,000 a month and at the end of 73 months, ownership of the life insurance policy was to revert to the husband and no further life insurance would be required. William was required to turn over to Barbara two life insurance policies worth $35,000, even if there was no further obligation to pay alimony. William has maintained the decreasing term policy and has turned over the other two policies.

The property settlement agreement also provided for equitable distribution. Under the agreement, Barbara received title to the car she was driving, all assets in her name, all of the personal property in the marital home, and title to the marital home. The marital home had been subject to a first mortgage, maintained as current at the time of transfer by William. After the transfer, Barbara became responsible for the mortgage. Barbara released any claim to William's insurance business and to any other assets owned by him. In addition to maintaining the mortgage before transfer, William was also required to pay all marital bills and debts and an outstanding balance due on a bank note.

At the hearing on the motion for continuation of alimony and post-judgment relief, Judge Koenig found that William's income had decreased by about 11% since 1986. Based on this finding Judge Koenig decided that William's obligation to Barbara should be decreased from $1,000 a month to $700 a month and the alimony should be made permanent.

In making this determination Judge Koenig specifically did not rely on *Lepis v. Lepis*, 83 *N.J.* 139, 416 *A.*2d 45 (1980), which requires that the party seeking modification show "changed circumstances." He relied on William's current ability to pay, Bar-

bara's ability to maintain her standard of living, and William's ability to maintain his standard of living if he had to pay $700 a month alimony. The judge also considered the age of the parties, the 28-year duration of the marriage, and Barbara's health. He observed that Barbara probably faced a second operation on her arthritic right thumb and that she likely was facing a similar operation on her left thumb. The judge concluded that some alimony was an important ingredient in Barbara's attempt to maintain her standard of living. He decided not to terminate the alimony but reduced the payments from $1,000 per month to $700 per month.

## II

Courts have the power to modify agreements on the basis of *N.J.S.A.* 2A:34–23, which provides in pertinent part:

> Pending any matrimonial action brought in this State or elsewhere, or after judgment of divorce or maintenance, whether obtained in this State or elsewhere, the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, or any of them, as the circumstances of the parties and the nature of the case shall render fit, reasonable and just[.] ... Orders so made may be revised and altered by the court from time to time as circumstances may require.

The standard for modifying settlement agreements is usually "changed circumstances." *Lepis v. Lepis, supra,* 83 *N.J.* at 146–47, 416 *A.*2d 45. Generally, "[a] *prima facie* showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status." *Id.* at 157, 416 *A.*2d 45. To show "changed circumstances," the moving party must show that the change has substantially impaired one's ability to support oneself. *Id.* Only after the moving party has made a *prima facie* showing, should a respondent's ability to pay become a factor for the judge to consider. *Id.* Once these steps have been completed, the judge should decide whether to hold a plenary hearing. *Id.* at 159, 416 *A.*2d 45. A hearing is not required when the material facts are not in genuine dispute. *Id.* "Courts should be free to

exercise their discretion to prevent unnecessary duplication of proofs and arguments." *Id.* Not every modification application requires a plenary hearing.

In the present case, the agreement specifically provided that defendant was "entitled" to apply for a modification of the alimony award after the termination of the original 73 months. In a similar situation, the Chancery Division found that when the settlement agreement provides for the supported party to make an application for continued or increased support at the end of a specified period, the agreement "establish[ed] a right in plaintiff [ex-wife] to make [an] application for a modification—not the type of modification contemplated and dealt with in *Lepis, supra,* but one which is *related* to the establishment of the standard of living of the parties during the marriage." *Sterling v. Sterling,* 180 *N.J.Super.* 569, 572, 435 *A.*2d 1192 (Ch.Div.1981), *rev'd on other grounds,* 191 *N.J.Super.* 547, 468 *A.*2d 439 (App.Div.1983).

As in *Sterling,* the agreement between the Webers specifically provided for the possibility of continuing alimony beyond the original, limited term. Barbara was entitled per the agreement to ask the court either to modify or continue her alimony without any *prima facie* showing of changed circumstances. We see nothing contrary to existing law or inimicable to public policy to prevent the parties from providing in the agreement for judicial review of reasonable alimony terms after six years, if the parties cannot then agree on the amount or the continuation of alimony. The agreement expressly provided that "[t]he court shall make the determination at that time based on the financial circumstances of the parties at that time including their respective incomes, ability to pay and needs." Indeed, periodic judicial review after passage of a substantial time period is surely preferable to reliance on sheer clairvoyance alone or resort to interminable bickering.

Moreover, we find no basis to classify Barbara's alimony award of $1,000 a month for 73 months as so-called "rehabilitative" alimony. The award was not so classified by the parties in the agreement. We reject William's effort now to recast the award in

that necessarily finite light. Rehabilitative alimony is "alimony payable for a short, but specific and terminable period of time, which will cease when the recipient is, in the exercise of reasonable efforts, in a position of self-support." *Turner v. Turner,* 158 *N.J.Super.* 313, 314, 385 *A.*2d 1280 (Ch.Div.1978). Several reasons exist for rehabilitative alimony:

[It] 1. Directs the recipient to seek and develop within a precise time period skills necessary to obtain suitable employment[;]

2. Provides the payor with some certainty of the nature and the extent of his obligation[; and]

3. Permits a court to consider reasonably foreseeable events involving the parties and make a present determination of when alimony shall cease, which hopefully will avoid further recourse to our courts. [*See Turner, supra,* 158 *N.J.Super.* at 314–15, 385 *A.*2d 1280.]

Barbara's alimony award cannot be characterized as rehabilitative although it was for a relatively short, specific and potentially terminable time period. She had no obligation under the agreement to exercise reasonable efforts to put herself in a position of total self-support. *See Turner,* 158 *N.J.Super.* at 314, 385 *A.*2d 1280. The purpose of her alimony award was not to direct her to seek and develop skills necessary to obtain upgraded or more suitable employment. *Id.* at 314–15, 385 *A.*2d 1280. While the award did provide William with some measure of certainty of the nature and extent of his obligation to Barbara, the award was in no way calculated or conditioned on her economic "rehabilitation" or the enhancement of her skills by further education or training. Her initial $1,000 a month award does not meet the definition or purpose of rehabilitative alimony; it cannot be properly characterized as rehabilitative alimony.

Finally, we find no merit to William's contention that he was entitled to a plenary hearing. The economic data was clearcut and straight forward. The judge considered all relevant facts—the income, standards of living, ages, and health of both parties, and the duration of the marriage. We see no abuse of discretion in the award of $700 a month permanent alimony.

Affirmed.