MELVIN M. MAHONEY, PLAINTIFF-RESPONDENT, v. JUNE LEE MAHONEY, DEFENDANT-APPELLANT.

Argued September 13, 1982—Decided December 15, 1982.

490

*Joseph C. Glavin, Jr.,* argued the cause for appellant (*Schumann, Hession, Kennelly & Dorment,* attorneys).

*Charles J. Casale, Jr.,* argued the cause for respondent.

The opinion of the Court was delivered by

PASHMAN, J.

Once again the Court must interpret this state's law regarding the distribution of marital property upon divorce. The question here is whether the defendant has the right to share the value of a professional business (M.B.A.) degree earned by

her former husband during their marriage. The Court must decide whether the plaintiff's degree is "property" for purposes of *N.J.S.A.* 2A:34–23, which requires equitable distribution of "the property, both real and personal, which was legally and beneficially acquired ... during the marriage." If the M.B.A. degree is not property, we must still decide whether the defendant can nonetheless recover the money she contributed to her husband's support while he pursued his professional education. For the reasons stated below, we hold that the plaintiff's professional degree is not property and therefore reject the defendant's claim that the degree is subject to equitable distribution. To this extent, we concur in the reasoning of the Appellate Division. Notwithstanding this concurrence, we reverse the judgment of the Appellate Division, which had the effect of denying the defendant any remedial relief for her contributions toward her husband's professional education and remand for further proceedings.

I

When the parties married in Indiana in 1971, plaintiff, Melvin Mahoney, had an engineering degree and defendant, June Lee Mahoney, had a bachelor of science degree. From that time until the parties separated in October 1978 they generally shared all household expenses. The sole exception was the period between September 1975 and January 1977, when the plaintiff attended the Wharton School of the University of Pennsylvania and received an M.B.A. degree.

During the 16-month period in which the plaintiff attended school, June Lee Mahoney contributed about $24,000 to the household. Her husband made no financial contribution while he was a student. Melvin's educational expenses of about $6,500 were paid for by a combination of veterans' benefits and a payment from the Air Force. After receiving his degree, the plaintiff went to work as a commercial lending officer for Chase Manhattan Bank.

Meanwhile, in 1976 the defendant began a part-time graduate program at Rutgers University, paid for by her employer, that led to a master's degree in microbiology one year after the parties had separated. June Lee worked full time throughout the course of her graduate schooling.

In March 1979, Melvin Mahoney sued for divorce; his wife filed a counterclaim also seeking a divorce. In May 1980, the trial court granted dual judgments of divorce on the ground of 18 months continuous separation.

At the time of trial, plaintiff's annual income was $25,600 and defendant's income was $21,000. No claim for alimony was made. The parties owned no real property and divided the small amount of their personal property by agreement.

The only issue at trial was the defendant's claim for reimbursement of the amount of support she gave her husband while he obtained his M.B.A. degree. Defendant sought 50% of the $24,000 she had contributed to the household during that time, plus one-half of the $6,500 cost of her husband's tuition.

The trial court decided that defendant should be reimbursed, 175 *N.J.Super.* 443 (Ch.Div.1980), holding that "the education and degree obtained by plaintiff, under the circumstances of this case, constitute a property right ...." *Id.* at 447. However, the court did not attempt to determine the value of plaintiff's M.B.A. degree. Instead, finding that in this case "[t]o ignore the contributions of the sacrificing spouse would be ... an unjust enrichment of the educated spouse," *id.* at 446, the court ordered the award of a "reasonable sum as a credit [for] ... the maintenance of the household and the support of plaintiff during the educational period." *Id.* at 447. Plaintiff was ordered to reimburse his wife in the amount of $5,000, to be paid at the rate of $100 per month. The court did not explain why it chose this amount.

Plaintiff appealed to the Appellate Division, which reversed the award. 182 *N.J.Super.* 598 (1982). It not only rejected defendant's claim for reimbursement but also held that neither a

professional license nor an educational degree is "property" for the purposes of the equitable distribution statute, *N.J.S.A.* 2A:34–23. In so holding, the Appellate Division stated that it was bound by *Stern v. Stern,* 66 *N.J.* 340, 345 (1975), where the Court held that "a person's earning capacity ... should not be recognized as a separate, particular item of property within the meaning of *N.J.S.A.* 2A:34–23." (footnote omitted). The Appellate Division noted that if enhanced earning capacity is not property, then "neither is the license or degree, which is merely the memorialization of the attainment of the skill, qualification and educational background which is the prerequisite of the enhanced earning capacity...." 182 *N.J.Super.* at 605. The court noted that degrees and licenses lack many of the attributes of most property rights, *id.* at 605, and that their value is not only speculative, *id.* at 609, but also may be fully accounted for by way of alimony and equitable division of the other assets. *Id.* at 607.

In rejecting defendant's claim for reimbursement, the Appellate Division disapproved of the attempt to measure the contributions of the parties to one another or to their marriage. The court cited with approval *Wisner v. Wisner,* 129 *Ariz.* 333, 631 *P.* 2d 115, 123 (Ct.App.1981), where an Arizona appeals court stated:

> [I]t is improper for a court to treat a marriage as an arm's length transaction by allowing a spouse to come into court *after* the fact and make legal arguments regarding unjust enrichment ....
>
> ... [C]ourts should assume, in the absence of contrary proof, that the decision [to obtain a professional degree] was mutual and took into account what sacrifices the community [of husband and wife] needed to make in the furtherance of that decision. [emphasis in original]

The Appellate Division saw no need to distinguish contributions made toward a spouse's attainment of a license or degree from other contributions, calling such special treatment "a kind of elitism which inappropriately depreciates the value of all the other types of contributions made to each other by other spouses ...." 182 *N.J.Super.* at 613. Finally, the court noted that in this case each spouse left the marriage "with comparable earn-

ing capacity and comparable educational achievements." *Id.* at 615. The court did not order a remand.

We granted certification, 91 *N.J.* 191 (1982).

## II

This case first involves a question of statutory interpretation. The Court must decide whether the Legislature intended an M.B.A. degree to be "property" so that, if acquired by either spouse during a marriage, its value must be equitably distributed upon divorce. In determining whether the Legislature intended to treat an M.B.A. degree as property under *N.J.S.A.* 2A:34–23, the Court gains little guidance from traditional rules of statutory construction. There is no legislative history on the meaning of the word "property" in the equitable distribution statute, *L.*1971, *c.* 212, *N.J.S.A.* 2A:34–23, and the statute itself offers no guidance.[1] Therefore, statutory construction in this case means little more than an inquiry into the extent to which professional degrees and licenses share the qualities of other things that the Legislature and courts have treated as property.

Regarding equitable distribution, this Court has frequently held that an "expansive interpretation [is] to be given to the word 'property,'" *Gauger v. Gauger,* 73 *N.J.* 538, 544 (1977). *Accord Kruger v. Kruger,* 73 *N.J.* 464, 468 (1977); *Painter v. Painter,* 65 *N.J.* 196, 217 (1974). New Jersey courts have subjected a broad range of assets and interests to equitable distribution including vested but unmatured private pensions, *Kikkert v. Kikkert,* 88 *N.J.* 4 (1981); military retirement pay and disability benefits, *Kruger v. Kruger,*[2] *supra;* unliquidated claims for

---

[1] The 1980 amendments to the law, *L.*1980, *c.* 181, which excluded from equitable distribution property acquired after the marriage by way of gift, devise or bequest, had no bearing on the issue of what types of chattels or interests should be treated as property.

[2] In *McCarty v. McCarty,* 453 *U.S.* 210, 101 *S.Ct.* 2728, 69 *L.Ed.*2d 589 (1981), the United States Supreme Court held that federal military retirement pay was not subject to state divorce laws. On September 8, 1982, this holding was overruled by the enactment of the "Uniformed Services Former Spouses' Protection Act," 10 *U.S.C.* § 1401 note, § 1408(c)(1).

benefits under workers' compensation, *Hughes v. Hughes,* 132 *N.J.Super.* 559 (Ch.Div.1975); and personal injury claims, *DiTolvo v. DiTolvo,* 131 *N.J.Super.* 72, 80–82 (App.Div.1974). *But see Amato v. Amato,* 180 *N.J.Super.* 210 (App.Div.1981) (reversing trial court's equitable distribution award requiring wife to give husband 25% of any proceeds she might recover for medical malpractice that occurred during the marriage).

This Court, however, has never subjected to equitable distribution an asset whose future monetary value is as uncertain and unquantifiable as a professional degree or license. The Appellate Division discussed at some length the characteristics that distinguish professional licenses and degrees from other assets and interests, including intangible ones, that courts equitably distribute as marital property. Quoting from *In re Marriage of Graham,* 194 *Colo.* 429, 574 *P.2d* 75, 77 (1978), in which the Colorado Supreme Court held that an M.B.A. degree is not subject to equitable distribution, the court stated:

> An educational degree, such as an M.B.A., is simply not encompassed even by the broad views of the concept of "property." It does not have an exchange value or any objective transferable value on an open market. It is personal to the holder. It terminates on death of the holder and is not inheritable. It cannot be assigned, sold, transferred, conveyed, or pledged. An advanced degree is a cumulative product of many years of previous education, combined with diligence and hard work. It may not be acquired by the mere expenditure of money. It is simply an intellectual achievement that may potentially assist in the future acquisition of property. In our view, it has none of the attributes of property in the usual sense of that term. [182 *N.J.Super.* at 605]

A professional license or degree is a personal achievement of the holder. It cannot be sold and its value cannot readily be determined. A professional license or degree represents the opportunity to obtain an amount of money only upon the occurrence of highly uncertain future events. By contrast, the vested but unmatured pension at issue in *Kikkert, supra,* entitled the owner to a definite amount of money at a certain future date.

The value of a professional degree for purposes of property distribution is nothing more than the possibility of enhanced earnings that the particular academic credential will

provide. In *Stern v. Stern,* 66 *N.J.* 340, 345 (1975), we held that a lawyer's

> earning capacity, even where its development has been aided and enhanced by the other spouse ... should not be recognized as a separate, particular item of property within the meaning of *N.J.S.A.* 2A:34–23. Potential earning capacity ... should not be deemed property as such within the meaning of the statute. [footnote omitted] [3]

Equitable distribution of a professional degree would similarly require distribution of "earning capacity"—income that the degree holder might never acquire. The amount of future earnings would be entirely speculative. Moreover, any assets resulting from income for professional services would be property acquired *after* the marriage; the statute restricts equitable distribution to property acquired *during* the marriage. *N.J.S.A.* 2A:34–23. *Accord In re Marriage of Aufmuth,* 89 *Cal.App.*3d 446, 152 *Cal.Rptr.* 668, 678 (1979).

Valuing a professional degree in the hands of any particular individual at the start of his or her career would involve a gamut of calculations that reduces to little more than guesswork. As the Appellate Division noted, courts would be required to determine far more than what the degree holder could earn in the new career. The admittedly speculative dollar amount of

> earnings in the "enhanced" career [must] be reduced by the ... income the spouse should be assumed to have been able to earn if otherwise employed. In our view [this] is ordinarily nothing but speculation, particularly when it is fair to assume that a person with the ability and motivation to complete professional training or higher education would probably utilize those attributes in concomitantly productive alternative endeavors. [182 *N.J.Super.* at 609]

Even if such estimates could be made, however, there would remain a world of unforeseen events that could affect the earning potential—not to mention the actual earnings—of any particular degree holder.

---

[3] A professional degree should not be equated with goodwill which, as we noted in *Stern,* may, in a given case, add economic worth to a property interest. *Stern v. Stern,* 66 *N.J.* at 346–47 n. 5 (1975).

> A person qualified by education for a given profession may choose not to practice it, may fail at it, or may practice in a speciality, location or manner which generates less than the average income enjoyed by fellow professionals. The potential worth of the education may never be realized for these or many other reasons. An award based upon the prediction of the degree holder's success at the chosen field may bear no relationship to the reality he or she faces after the divorce. [*DeWitt v. DeWitt,* 98 *Wis.*2d 44, 296 *N.W.*2d 761, 768 (Ct.App.1980) (footnote omitted)]

Moreover, the likelihood that an equitable distribution will prove to be unfair is increased in those cases where the court miscalculates the value of the license or degree.

> The potential for inequity to the failed professional or one who changes careers is at once apparent; his or her spouse will have been awarded a share of something which never existed in any real sense. [*Id.*]

The finality of property distribution precludes any remedy for such unfairness. "Unlike an award of alimony, which can be adjusted after divorce to reflect unanticipated changes in the parties' circumstances, a property division may not [be adjusted]." *Id.* (footnote omitted).

Because of these problems, most courts that have faced the issue have declined to treat professional degrees and licenses as marital property subject to distribution upon divorce. *See, e.g., Wisner, supra* (medical license); *Frausto v. Frausto,* 611 *S.W.*2d 656 (Tex.Civ.App.1981) (medical license); *De Witt, supra* (law degree); *Aufmuth, supra* (law degree); *Graham, supra* (M.B.A.); *Wilcox v. Wilcox,* 173 *Ind.App.* 661, 365 *N.E.*2d 792 (1977) (Ph.D. degree); *Todd v. Todd,* 272 *Cal.App.*2d 786, 78 *Cal.Rptr.* 131 (1969) (law degree). Several courts, while not treating educational degrees as property, have awarded the supporting spouse an amount based on the cost to the supporting spouse of obtaining the degree. In effect, the supporting spouse was reimbursed for her financial contributions used by the supported spouse in obtaining a degree. *See, e.g., DeLa Rosa v. DeLa Rosa,* 309 *N.W.*2d 755, 759 (Minn.1981) (medical degree); *Hubbard v. Hubbard,* 603 *P.*2d 747, 751 (Okla.1979) (medical degree); *In re Marriage of Horstmann,* 263 *N.W.*2d 885, 891 (Iowa 1978) (law degree). *Cf. Inman v. Inman,* 578 *S.W.*2d 266, 269 (Ky.Ct.App.1979) (dental license held to be property but measure

of wife's interest was amount of investment in husband's education).

Even if it were marital property, valuing educational assets in terms of their cost would be an erroneous application of equitable distribution law. As the Appellate Division explained, the cost of a professional degree "has little to do with any real value of the degree and fails to consider at all the nonfinancial efforts made by the degree holder in completing his course of study." 182 *N.J.Super.* at 610. *See also DeWitt, supra,* 296 *N.W.*2d at 767. Once a degree candidate has earned his or her degree, the amount that a spouse—or anyone else—paid towards its attainment has no bearing whatever on its value. The cost of a spouse's financial contributions has no logical connection to the value of that degree.

As the Appellate Division correctly noted, "the cost approach [to equitable distribution] is plainly not conceptually predicated on a property theory at all but rather represents a general notion of how to do equity in this one special situation." 182 *N.J.Super.* at 610. Equitable distribution in these cases derives from the proposition that the supporting spouse should be reimbursed for contributions to the marital unit that, because of the divorce, did not bear its expected fruit for the supporting spouse.

The trial court recognized that the theoretical basis for the amount of its award was not equitable distribution, but rather reimbursement. It held that "the education and degree obtained by plaintiff, under the circumstances of this case, constitute a property right *subject to equitable offset* upon the dissolution of the marriage." 175 *N.J.Super.* at 447 (emphasis added). The court allowed a "reasonable sum as a credit . . . on behalf of the maintenance of the household and the support of the plaintiff during the educational period." *Id.* Although the court found that the degree was distributable property, it actually reimbursed the defendant without attempting to give her part of the *value* of the degree.

■ This Court does not support reimbursement between former spouses in alimony proceedings as a general principle. Marriage is not a business arrangement in which the parties keep track of debits and credits, their accounts to be settled upon divorce. Rather, as we have said, "marriage is a shared enterprise, a joint undertaking . . . in many ways it is akin to a partnership." *Rothman v. Rothman*, 65 *N.J.* 219, 229 (1974); *see also Jersey Shore Medical Center-Fitkin Hospital v. Estate of Baum*, 84 *N.J.* 137, 141 (1980). But every joint undertaking has its bounds of fairness. Where a partner to marriage takes the benefits of his spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy.

In this case, the supporting spouse made financial contributions towards her husband's professional education with the expectation that both parties would enjoy material benefits flowing from the professional license or degree. It is therefore patently unfair that the supporting spouse be denied the mutually anticipated benefit while the supported spouse keeps not only the degree, but also all of the financial and material rewards flowing from it.

Furthermore, it is realistic to recognize that in this case, a supporting spouse has contributed more than mere earnings to her husband with the mutual expectation that both of them—she as well as he—will realize and enjoy material improvements in their marriage as a result of his increased earning capacity. Also, the wife has presumably made personal financial sacrifices, resulting in a reduced or lowered standard of living. Additionally, her husband, by pursuing preparations for a future career, has foregone gainful employment and financial contributions to the marriage that would have been forthcoming had he been employed. He thereby has further reduced the level of support his wife might otherwise have received, as well as the standard of living both of them would have otherwise enjoyed. In effect,

through her contributions, the supporting spouse has consented to live at a lower material level while her husband has prepared for another career. She has postponed, as it were, present consumption and a higher standard of living, for the future prospect of greater support and material benefits. The supporting spouse's sacrifices would have been rewarded had the marriage endured and the mutual expectations of both of them been fulfilled. The unredressed sacrifices—loss of support and reduction of the standard of living—coupled with the unfairness attendant upon the defeat of the supporting spouse's shared expectation of future advantages, further justify a remedial reward. In this sense, an award that is referable to the spouse's monetary contributions to her partner's education significantly implicates basic considerations of marital support and standard of living—factors that are clearly relevant in the determination and award of conventional alimony.

To provide a fair and effective means of compensating a supporting spouse who has suffered a loss or reduction of support, or has incurred a lower standard of living, or has been deprived of a better standard of living in the future, the Court now introduces the concept of reimbursement alimony into divorce proceedings. The concept properly accords with the Court's belief that regardless of the appropriateness of permanent alimony or the presence or absence of marital property to be equitably distributed, there will be circumstances where a supporting spouse should be reimbursed for the financial contributions he or she made to the spouse's successful professional training. Such reimbursement alimony should cover *all* financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses and any other contributions used by the supported spouse in obtaining his or her degree or license.

This result is consistent with the remedial provisions of the matrimonial statute. *N.J.S.A.* 2A:34–23. A basic purpose of alimony relates to the quality of economic life to which one

spouse is entitled and that becomes the obligation of the other. Alimony has to do with support and standard of living. *See Khalaf v. Khalaf,* 58 *N.J.* 63, 69 (1971). We have recently recognized the relevance of these concepts in accepting the notion of rehabilitative alimony, which is consonant with the basic underlying rationale that a party is entitled to continue at a customary standard of living inclusive of costs necessary for needed educational training. *Lepis v. Lepis,* 83 *N.J.* 139, 155 n. 9.

The statute recognizes that alimony should be tailored to individual circumstances, particularly those relating to the financial status of the parties. Thus, in all actions for divorce (fault and no-fault), when alimony is awarded, the court should consider actual need, ability to pay and duration of the marriage. In a "fault" divorce, however, the court "may consider also the proofs made in establishing such ground in determining ... alimony ... that is fit, reasonable and just." *N.J.S.A.* 2A:34–23. There is nothing in the statute to suggest that the standards for awarding alimony are mutually exclusive. Consequently, the financial contributions of the parties during the marriage can be relevant. Financial dishonesty or financial unfairness between the spouses, or overreaching also can be material. The Legislature has not precluded these considerations. Nothing in the statute precludes the court from considering marital conduct—such as one spouse contributing to the career of the other with the expectation of material benefit—in fashioning alimony awards. *See Lepis v. Lepis, supra.* The flexible nature of relief in a matrimonial cause is also evidenced by the equitable distribution remedy that is provided in the same section of the matrimonial statute.

The Court does not hold that every spouse who contributes toward his or her partner's education or professional training is entitled to reimbursement alimony. Only monetary contributions made with the mutual and shared expectation that both parties to the marriage will derive increased income and

material benefits should be a basis for such an award. For example, it is unlikely that a financially successful executive's spouse who, after many years of homemaking, returns to school would upon divorce be required to reimburse her husband for his contributions toward her degree. Reimbursement alimony should not subvert the basic goals of traditional alimony and equitable distribution.

In proper circumstances, however, courts should not hesitate to award reimbursement alimony. Marriage should not be a free ticket to professional education and training without subsequent obligations. This Court should not ignore the scenario of the young professional who after being supported through graduate school leaves his mate for supposedly greener pastures. One spouse ought not to receive a divorce complaint when the other receives a diploma.[4] Those spouses supported through professional school should recognize that they may be called upon to reimburse the supporting spouses for the financial contributions they received in pursuit of their professional training. And they cannot deny the basic fairness of this result.[5]

As we have stated, reimbursement alimony will not always be appropriate or necessary to compensate a spouse who has con-

---

. [4]*New York Times,* Nov. 21, 1982, at p. 72, col. 2.

[5]This decision recognizes the fairness of an award of reimbursement alimony for past contributions to a spouse's professional education that were made with the expectation of mutual economic benefit. We need not in the present posture of this case determine the degree of finality or permanency that should be accorded an award of reimbursement alimony as compared to conventional alimony. As noted, an award of reimbursement alimony combines elements relating to the support, standard of living and financial expectations of the parties with notions of marital fairness and avoidance of unjust enrichment. We must also recognize that, while these cases frequently illustrate common patterns of human behavior and experience among married couples, circumstances vary among cases. Consequently, it would be unwise to attempt to anticipate all of the ramifications that flow from our present recognition of a right to reimbursement alimony. We therefore leave for future cases questions as to whether and under what changed circumstances such awards may be modified or adjusted.

tributed financially to the partner's professional education or training. "Rehabilitative alimony" may be more appropriate in cases where a spouse who gave up or postponed her own education to support the household requires a lump sum or a short-term award to achieve economic self-sufficiency. The Court specifically approved of such limited alimony awards in *Lepis v. Lepis,* 83 *N.J.* 139, 155 n. 9 (1980), stating that we did "not share the view that only unusual cases will warrant the 'rehabilitative alimony' approach." However, rehabilitative alimony would not be appropriate where the supporting spouse is unable to return to the job market, or has already attained economic self-sufficiency.

Similarly, where the parties to a divorce have accumulated substantial assets during a lengthy marriage, courts should compensate for any unfairness to one party who sacrificed for the other's education, not by reimbursement alimony but by an equitable distribution of the assets to reflect the parties' different circumstances and earning capacities. In *Rothman, supra,* the Court explicitly rejected the notion that courts should presume an equal division of marital property. 65 *N.J.* at 232 n. 6. "Rejecting any simple formula, we rather believe that each case should be examined as an individual and particular entity." *Id.* If the degree-holding spouse has already put his professional education to use, the degree's value in enhanced earning potential will have been realized in the form of property, such as a partnership interest or other asset, that is subject to equitable distribution. *See Stern, supra,* 65 *N.J.* at 346–47.

The degree holder's earning capacity can also be considered in an award of permanent alimony.[6] Alimony awards

---

[6]It should be noted that alimony is not generally available for a self-supporting spouse under the laws of Minnesota, *see DeLa Rosa, supra,* 309 *N.W.* 2d at 758, or Kentucky, *see Inman, supra,* 578 *S.W.*2d at 270, two states that have treated professional licenses as property. Those states are thus handicapped in their ability to do equity in situations where little or no marital

under *N.J.S.A.* 2A:34-23 must take into account the supporting spouse's ability to pay; earning capacity is certainly relevant to this determination. Our courts have recognized that a primary purpose of alimony, besides preventing either spouse from requiring public assistance, is "to permit the wife, who contributed during marriage to the accumulation of the marital assets, to share therein." *Lynn v. Lynn,* 153 *N.J.Super.* 377, 382 (Ch.Div. 1977), *rev'd* on other grounds, 165 *N.J.Super.* 328 (App.Div.1979); *accord Gugliotta v. Gugliotta,* 160 *N.J.Super.* 160, 164 (Ch.Div.), aff'd, 164 *N.J.Super.* 139 (App.Div.1978). Even though the enhanced earning potential provided by a degree or license is not "property" for purposes of *N.J.S.A.* 2A:34-23, it clearly should be a factor considered by the trial judge in determining a proper amount of alimony. If the degree holder's actual earnings turn out to diverge greatly from the court's estimate, making the amount of alimony unfair to either party, the alimony award can be adjusted accordingly.

### III

We stated in *Stern, supra,* that while earning potential should not be treated as a separate item of property,

> [p]otential earning capacity is doubtless a factor to be considered by a trial judge in determining what distribution will be "equitable" and it is even more obviously relevant upon the issue of alimony. [66 *N.J.* at 345]

We believe that *Stern* presents the best approach for achieving fairness when one spouse has acquired a professional degree or license during the marriage. Courts may not make any permanent distribution of the value of professional degrees and licenses, whether based upon estimated worth or cost. However, where a spouse has received from his or her partner financial contributions used in obtaining a professional degree or license with the expectation of deriving material benefits for both marriage partners, that spouse may be called upon to reimburse the supporting spouse for the amount of contributions received.

---

property has been accumulated and the supporting spouse does not qualify for maintenance unless they treat professional licenses as property.

In the present case, the defendant's financial support helped her husband to obtain his M.B.A. degree, which assistance was undertaken with the expectation of deriving material benefits for both spouses. Although the trial court awarded the defendant a sum as "equitable offset" for her contributions, the trial court's approach was not consistent with the guidelines we have announced in this opinion. Therefore, we are remanding the case so the trial court can determine whether reimbursement alimony should be awarded in this case and, if so, what amount is appropriate.

The judgment of the Appellate Division is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*For reversal and remandment* —Chief Justice WILENTZ and Justices PASHMAN, CLIFFORD, SCHREIBER, HANDLER, POLLOCK and O'HERN—7.

*For affirmance* —None.