**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3759-17T1

MEHRZAD AZMI SHABESTARI,

    Plaintiff-Respondent,

v.

REZA FARHADI,

    Defendant-Appellant.

_____

Argued May 9, 2019 – Decided June 18, 2019

Before Judges Simonelli, Whipple and Firko.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0817-16.

Gregory A. Pasler argued the cause for appellant (Townsend, Tomaio, & Newmark, LLC, attorneys; Gregory A. Pasler, on the briefs).

Karen Fasano Thomsen argued the cause for respondent (Armour Law Firm, attorneys; Karen Fasano Thomsen, on the brief).

PER CURIAM

Defendant, Reza Farhadi, appeals from a March 14, 2018 dual final judgment of divorce, entered after a seven-day trial, ordering him to pay his student loan and marital debt; concluding plaintiff, Mehrzad Azmi Shabestari, satisfied a portion of her tuition expenses with funds provided by her parents; and requiring defendant to pay one-half of the rent after he left the marital residence. There exists substantial, credible evidence in the record to support the trial judge's findings, including his credibility findings, and we see no abuse of discretion. We affirm substantially for the reasons given by the judge in his comprehensive seventeen-page written opinion.[1] We add the following remarks.

I.

The parties were married in Iran on July 22, 2011, and in Somerset, New Jersey on July 26, 2014. No children were born of the marriage. In Fall 2011, the parties moved to New Jersey and both enrolled in post-graduate Ph.D.

---

[1] Defendant's appeal relative to registration of the parties' Islamic divorce is moot because an order entered on September 14, 2018, and a consent order entered on October 29, 2018, resolve the issues on appeal. Further, at oral argument, counsel for plaintiff represented the Islamic divorce was registered on January 14, 2019, rendering defendant's appeal as to this issue moot. Plaintiff thus withdrew her cross-appeal seeking defendant's compliance with registering the Islamic divorce prior to oral argument. We also note consent orders are not appealable, Janicky v. Point Bay Fuel, Inc., 410 N.J. Super. 203, 207 (App. Div. 2009) (citation omitted), and the consent order here did not preserve any right to appeal.

A-3759-17T1

programs at Rutgers University. In order to meet their tuition expenses, defendant testified he obtained two student loans in his name totaling $145,540 but since his tuition was approximately $80,000, the difference was applied towards payment of marital expenses. Defendant admitted over $41,377.73 of interest accrued on his loans because he failed to timely complete his studies, and his parents provided the parties with $225,000 in cash in order to subsidize their expenses.

Defendant claimed he procured two types of student loans, Stafford Direct Loans totaling $82,000, and Student Plus Loans totaling $63,540, yet his first Case Information Statement (CIS) dated July 14, 2016 indicates his student loan debt was $176,661. Under the section entitled "Name of Responsible Party" he listed "D." He claimed his tuition was fully paid for by the Stafford Direct Loans and the loan funds were directly remitted to Rutgers. Even though defendant claimed his Student Plus Loan was utilized for marital living expenses, the judge found defendant "failed to provide any evidence whatsoever that any loan proceeds were deposited into the parties' joint account or used for joint expenses."

Defendant had a green card and applied for his loans as a single, unmarried student, even though he was married at the time. Due to her immigration status,

plaintiff was ineligible for student loans, and paid her tuition with monetary gifts from her family. Both parties agreed plaintiff maintained her own personal savings account during the marriage, where she deposited gifts from her parents and her earnings. Defendant deposited money he received from his parents into the parties' joint account because "he viewed the marriage as a joint enterprise and he was the main investor." He also deposited his earnings into the joint account, and a portion into plaintiff's individual account. In total, defendant claimed he contributed $289,043 more than plaintiff towards their marital expenses, and he sought equitable distribution of these monies. He produced no documentary evidence specifying what he sought reimbursement for.

Plaintiff objected to defendant's claim for reimbursement because it was not pled or briefed, and he improperly raised it for the first time on the last day of trial during her redirect examination. The trial judge found defendant did not amend his CIS to list the loans from his parents until the eve of trial, on October 29, 2017. Defendant's amended CIS listed a loan in the amount of $232,825 from his parents under the Statement of Liabilities section, and he indicated it was a joint responsibility.[2]

---

[2] Pursuant to Rule 5:5-2(c):

The parties owned no significant assets in the United States, and any property individually owned by them in Iran remained in their respective names. Plaintiff testified she left the marriage debt free and obtained employment as an assistant professor of accounting at Towson University, while defendant allowed interest in excess of $41,377.73 to accrue on his student debt while he remained unemployed, but he pursued his dissertation in finance.

Defendant testified he made "proclamations" in Iran around the time of the parties' 2011 wedding and claimed plaintiff and her family "silently assented" to a loan agreement. The judge concluded, "[a]fter two years of litigation, [d]efendant did not offer any proof during trial to support his financial claim of a loan to the married couple from his parents[,]" and there were no terms associated with the purported loans. The judge found: "[d]efendant failed to present competent evidence rebutting the presumption that a transfer of

> Parties are under a continuing duty in all cases to inform the court of any material changes in the information supplied on the [CIS]. All amendments to the statement shall be filed with the court no later than [twenty] days before the final hearing. The court may prohibit a party from introducing into evidence any information not disclosed or it may enter such other order as it deems appropriate.

Defendant's second CIS was untimely filed.

A-3759-17T1

money from a parent to a child is a gift." On the issue of the loans, the judge concluded defendant

> failed to meet his burden of proof to establish the existence of his student loans. . . . No proof was provided that any indebtedness existed at the start of trial . . . . Additionally, [d]efendant failed to provide any proof regarding where the proceeds of the alleged loans were deposited or for what purpose they were used.

At trial, defendant "offered no proof of the existence of any parental loans, only his father's testimony[.]" Defendant's father testified there was no written documentation to confirm the so-called loans, he was unsure of the amount of money he gave his son during the marriage, and he was not informed the sum was $225,000 until after the complaint for divorce was filed. Moreover, the monies from defendant's parents were transferred into the parties' joint account, which was shared with defendant's brother and mother, leading the judge to conclude the money was comingled, and he could not "definitively conclude that the gifted monies were exclusively used for marital expenses." The judge also concluded defendant "failed to present competent evidence rebutting the presumption that a transfer of money from a parent to a child is a gift."

On appeal defendant argues the judge erred in his application of the statutory criteria under N.J.S.A. 2A:34-23.1 by finding defendant failed to

6

provide sufficient proof of his student loans, the amount owed, concluding it was "unproven, forgivable student debt[;]" ordering him to be responsible for all of the marital debt; that the trial judge abused his discretion by finding plaintiff satisfied $68,242 of her tuition payments; failed to equitably reimburse defendant for his investment in the marriage; and required him to contribute one-half of the rental payments for the parties' marital residence after he returned to Iran.

## II.

This was a relatively short-term marriage. Neither party sought alimony, no real property was acquired during the marriage, and there were minimal personal assets subject to equitable distribution. Neither party was awarded counsel fees. The judge carefully considered each statutory factor for equitable distribution under N.J.S.A. 2A:34-23.1 and determined plaintiff paid $78,391.25 towards her tuition debt of $93,203.55 based upon her "documentary proofs showing $68,242 in transfers from her individual account into the parties' joint . . . account . . . that correlate with tuition checks to Rutgers from the joint account." The parties' respective families gifted $14,812.30 to her to pay the tuition balance, and plaintiff provided documentary evidence of her $46,557.70 payment towards marital expenses.

 A-3759-17T1

Regarding defendant's student loan debt, the judge found defendant

> provided limited evidence . . . . He presented a partial printout of a login screen with his name on it as his sole proof of loans. He continually stated at trial that he "could go on-line" and print out the loan documents but he never did so. He did not provide any loan origination documents, loan statements or a credit report. [The partial printout] does not evidence loans in [d]efendant's name or show that any loans are outstanding.

In contrast, plaintiff produced extensive banking records, tuition bills, and her testimony was found credible by the judge. Plaintiff proved her tuition cost was $93,203.55 and $78,391.25 was paid towards the same. Defendant did not object to plaintiff's proofs. We reject defendant's arguments that the judge abused his discretion on this issue.

"Where the issue on appeal concerns which assets are available for distribution or the valuation of those assets . . . the standard of review is whether the trial judge's findings are supported by adequate credible evidence in the record." Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443-44 (App. Div. 1978). But "where the issue on appeal concerns the manner in which allocation of the eligible assets is made . . . . [we] may determine whether the amount and manner of the award constituted an abuse of the trial judge's discretion." Id. at 444. Thus we review the judge's decision as to equitable distribution for abuse

8

A-3759-17T1

of discretion, recognizing the court's "special jurisdiction and expertise in family matters[.]" Cesare v. Cesare, 154 N.J. 394, 413 (1998).  And we affirm equitable distribution awards "as long as the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." LaSala v. LaSala, 335 N.J. Super. 1, 6 (2000).

Equitable distribution is governed by N.J.S.A. 2A:34-23.1. This statute authorizes a judge to determine not only which assets are eligible for distribution and their value, but also how to allocate those assets. Rothman v. Rothman, 65 N.J. 219, 232 (1974).  When determining the parties' equitable distribution of the marital estate, a judge must consider, but is not limited to, the factors set forth in N.J.S.A. 2A:34-23.1.

The judge applied the factors set forth in N.J.S.A. 2A:34-23.1 to the parties' circumstances and found the parties were married for five years and eight months, they were in "good health[,]" and neither party brought substantial assets to the marriage.  Plaintiff was twenty-nine years old and defendant was thirty-three years old.  They lived a "moderately enhanced student lifestyle[,]" renting an apartment near Rutgers at a cost of $1,190 per month.  Plaintiff completed her coursework and was employed while defendant delayed completion of his Ph.D.—admittedly to defer his student loan payments—and

remained unemployed and supported by his family. The judge reached this conclusion because he found the parties commenced their studies in the United States at the same time, have similar post-graduate degrees, and comparable earning capacities. The judge found defendant incredulous when he "testified he has not looked for employment because there is no job available for him in the current market."

Defendant argues the judge abused his discretion by concluding plaintiff satisfied $68,242 of her tuition debt because there are "only three" simultaneous transfers to the joint account from plaintiff's individual account which correspond with tuition payments, and if "every dollar she contributed from her sole account to the joint account . . . went towards her tuition," she could not have contributed to the parties' living expenses. Defendant further contends plaintiff's documentation establishes she paid $41,849.25 of her tuition, and not $68,242, which he contends is proof he paid the remaining balance of $51,354.30 towards her tuition, while she did not contribute to his tuition and only minimally towards living expenses. We disagree. The judge aptly found plaintiff's parents gifted her approximately $123,000 over the course of the parties' marriage, which plaintiff credibly testified was not anticipated to be used for living expenses.

A-3759-17T1

The judge also found plaintiff credibly testified she earned $32,000 over five years, making her contribution to the marriage approximately $155,000. Subtracting the $27,000 bank account balance at the time she filed her complaint, plaintiff's financial contribution to the marriage was approximately $128,000.

At trial, plaintiff provided a detailed analysis of the money transfers from her personal account to the parties' joint checking account in order to write checks to Rutgers, and documentation from her student account verifying her tuition per semester, along with correlating checks to Rutgers for those amounts. Relying on Tiernan v. Carasaljo Pines, 51 N.J. Super. 393, 404-05 (App. Div. 1958), the trial judge rightfully determined the testimony of defendant and his father did not satisfy the two elements required to prove the existence of a loan: the lender advancing money or something of value at the time of the agreement, and a stipulation or agreement to repay the lender, including interest rates and date of repayment. Defendant failed to submit proof of any written or oral agreement to substantiate repayment of monies to his family.

All property "legally or beneficially acquired during the marriage . . . by either party by way of gift, devise, or intestate succession" except interspousal gifts is generally excluded from equitable distribution. N.J.S.A. 2A:34-23(h).

A-3759-17T1

"A 'gift' is a transfer without consideration, requiring an unequivocal donative intent on the part of the donor, actual or symbolic delivery of the subject matter of the gift, and an absolute and irrevocable relinquishment of ownership by the donor." Sleeper v. Sleeper, 184 N.J. Super. 544, 548 (App. Div. 1982) (citation omitted). "These matters are fact sensitive. When a particular debt is claimed to be owed to a member of one spouse's family, the burden of proof rests on the claiming spouse to establishing a bona fide obligation to repay the monies asserted as loans." Slutsky v. Slutsky, 451 N.J. Super. 332, 348 (App. Div. 2017).

Because there was no documentary evidence submitted by defendant, all of his proofs in this matter were testimonial in nature. The testimony of defendant and his father was insufficient to prove an oral contract was formed between plaintiff and defendant's family to repay the $225,000 amount. At his deposition, defendant testified: "Let me make it clear for you[,] for all money that I am claiming from my family[,] I didn't sign anything, I don't have proof from my family." Consequently, defendant failed to defeat the presumption that the monies from his parents were a gift. We see no reason to disturb the judge's findings on this issue.

III.

12

Next, defendant argues pursuant to <u>Mahoney v. Mahoney</u>, 91 N.J. 488 (1982), the judge erred by failing to apply an equitable remedy to reimburse defendant for his investment in the marriage. Plaintiff argues defendant failed to plead let alone prove a reimbursement claim. In <u>Mahoney</u>, the parties were married for approximately seven years before separating, and they shared the household expenses during the marriage. <u>Id.</u> at 492. The husband entered into a post-graduate program for sixteen months. <u>Ibid.</u> He did not contribute to household expenses during that time while the wife contributed approximately $24,000 towards the household expenses. <u>Ibid.</u>

The wife later returned to school part-time to obtain a post-graduate degree. <u>Id.</u> at 493. She worked full-time while in school, and completed her degree one year after the parties separated. <u>Ibid.</u> Neither party requested alimony, the parties did not acquire any real property, and they divided their minimal personal property. <u>Ibid.</u> The only issue at trial was whether the wife should be reimbursed for her contribution to the marriage while her husband was in school. <u>Ibid.</u> The trial court found the wife was entitled to an equitable share of the value of her husband's degree, but we reversed, finding professional licenses and educational degrees are not subject to equitable distribution. <u>Id.</u> at 493-94. Further, our Supreme Court has held it did not support reimbursement

between former spouses in alimony proceedings, and "every joint undertaking has its bounds of fairness." Id. at 500. Defendant relies on the Supreme Court's analysis:

> Where a partner to marriage takes the benefits of his [or her] spouse's support in obtaining a professional degree or license with the understanding that future benefits will accrue and inure to both of them, and the marriage is then terminated without the supported spouse giving anything in return, an unfairness has occurred that calls for a remedy.
>
> In this case, the supporting spouse made financial contributions towards her husband's professional education with the expectation that both parties would enjoy material benefits flowing from the professional license or degree. It is therefore patently unfair that the supporting spouse be denied the mutually anticipated benefit while the supported spouse keeps not only the degree, but also all of the financial and material rewards flowing from it.
>
> [Ibid.]

Defendant argues both parties pursuing doctorate degrees was a pivotal factor in entering the marriage, and since he paid more than one-half of plaintiff's tuition costs, he should be reimbursed for his "investment in the marriage." We disagree. As a procedural matter, defendant failed to preserve this issue on appeal because he did not plead same and did not brief it for the trial court. "[A] mere mention of an issue in oral argument does not require an

14

appellate court to address it."  Pressler & Verniero, Current N.J. Court Rules, cmt. 3 on R. 2:6-2 (2019); Selective Ins. Co. v. Rothman, 208 N.J. 580, 586 (2012).  Nevertheless, we will address the merits for the sake of completeness.

As noted previously, defendant did not raise the reimbursement issue until nine days before trial, thereby resulting in prejudice to plaintiff.  If a party requests college or post-secondary school contribution, the CIS instructions require a party to

> attach all relevant information pertaining to that request, including but not limited to documentation of all costs and reimbursements or assistance for which contribution is sought, such as invoices or receipts for tuition, board and books; proof of enrollment; and proof of all financial aid, scholarships, grants and student loans obtained.
>
> [Family Part Case Information Statement, Pressler & Verniero, Current N.J. Court Rules, Appendix V to R. 5:5-4 at www.gannlaw.com (2019).]

Defendant's first CIS attached three Rutgers invoices, which are of such poor quality it is impossible to discern the amounts of the bills or which semester they coincide with.  Defendant's second CIS also includes blurry invoices, and only half of a screenshot listing federal loans and other loans allegedly in his name.  The judge rightfully concluded these documents were incomplete and insufficient to support defendant's reimbursement and equitable distribution

claims. Further, plaintiff was deprived of the opportunity to conduct discovery as to defendant's second CIS which raised material, new information, and theories. Our courts have long upheld parties must come to court with "clean hands." "[T]he discretionary application of the equitable maxim of unclean hands applies to matrimonial cases. It is well settled that a party 'in equity must come into court with clean hands and . . . must keep them clean . . . throughout the proceedings.'" Clark v. Clark, 429 N.J. Super. 61, 77 (App. Div. 2012) (citation omitted) (quoting Chrisomalis v. Chrisomalis, 260 N.J. Super. 50, 53-54 (App. Div. 1992)).

Mahoney also held reimbursement alimony consists of "all financial contributions towards the former spouse's education, including household expenses, educational costs, school travel expenses[,] and any other contributions used by the supported spouse in obtaining his or her degree or license." 91 N.J. at 501. "[A]ny other contributions" includes expenses such as "medical expenses, clothing expenses, entertainment and leisure expenses, costs of toiletry and personal expenses and the like." Reiss v. Reiss, 195 N.J. Super. 150, 159 (Ch. Div. 1984), aff'd in part, remanded in part, 205 N.J. Super. 41 (App. Div. 1985).

Defendant claims he contributed $416,215 towards marital expenses, including the money from his parents, his student loans, and the interest accrued from those loans, while plaintiff only contributed $127,172. The evidence shows plaintiff contributed approximately $128,000 toward the marriage, and defendant failed to prove he paid for her entire education.

The present case is therefore distinguishable from Mahoney. Defendant did not exclusively pay for plaintiff's education, and she contributed to martial expenses, while the husband in Mahoney did not. Moreover, in Mahoney, the wife deferred her own education for the benefit of her husband. Here, the judge articulated:

> [t]he present case is distinguishable from cases where there is a supporting spouse who contributes to a partner's degree and is left without any benefit upon divorce. Both parties were students, both commenced [Ph.D.] studies at the same time, both worked during the marriage, and both received monetary gifts from their families.
>
> [(Citation omitted).]

Defendant's reliance on Mahoney is misplaced, and we defer to the judge's credibility assessments of the parties, the witness, and the judge's findings. The judge's decision was supported by ample credible evidence in the record and we see no reason to disturb his findings.

A-3759-17T1

IV.

Finally, defendant argues the judge erred by requiring him to contribute one-half of the rental payments because the complaint was filed three months after the parties separated, thereby releasing him from any obligation to pay rent. We disagree. Defendant left the marital residence and returned to Iran leaving plaintiff with exclusive possession of their apartment. Defendant relies on Painter v. Painter, 65 N.J. 196, 218 (1974), superseded in part by statutory amendment, N.J.S.A. 2A:23, L. 1980, c. 181, §1, as recognized in Landwehr v. Landwehr, 111 N.J. 491, 498 (1988), which held, "for purposes of determining what property will be eligible for distribution the period of acquisition should be deemed to terminate the day the complaint is filed."

Plaintiff testified defendant's name was on the parties' lease agreement, creating a contractual obligation separate and apart from "property" subject to equitable distribution, thereby making Painter inapplicable. She testified she asked defendant to either pay the rent or remove his name from the lease, which he refused to do. From the time defendant left the former marital residence, in December 2015, until the end of the lease term in July 2016, plaintiff paid for all Schedule A shelter expenses herself using her own funds.

It is a basic principle of landlord-tenant law that one has an obligation to pay rent under a lease, regardless of whether they live at the premises or not. A tenant's abandonment of a premises, without the consent of the landlord, severs the tenant's privity of estate, but does not sever the privity of contract, which requires the tenant to continue to pay rent under the lease. See N.J. Indus. Props. v. Y.C. & V.L. Inc., 100 N.J. 432, 443-44 (1985). Painter does not change this principle. The judge did not abuse his discretion by requiring defendant to reimburse plaintiff for one-half of the rental payments after he voluntarily abandoned the premises.

We conclude that the remaining arguments – to the extent we have not addressed them – lack sufficient merit to warrant any further discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3759-17T1