**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0600-19T2

SUSAN STEUBER,

    Plaintiff-Respondent,

v.

JOHN DESMELYK,

    Defendant-Appellant.

_____

> Argued November 12, 2020 – Decided December 28, 2020
>
> Before Judges Fuentes, Rose and Firko.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Somerset County, Docket No. FM-18-0320-19.
>
> Jenny Berse argued the cause for appellant (Berse Law, LLC, attorneys; David Cecil Bendush, on the briefs).
>
> Eric James Warner argued the cause for respondent (Law Office of Eric J. Warner, LLC, attorneys; Susan Steuber, on the pro se brief).

PER CURIAM

In this post-judgment matrimonial case, defendant John Desmelyk appeals from the Family Part's August 27, 2019 order denying his cross-motion to modify or vacate the parties' marital settlement agreement (MSA) negotiated and signed by the parties on August 14, 2018, and terminating his alimony obligation based on changed circumstances. We affirm.

I.

We derive the following facts from the motion record. Married in October 2011, the parties divorced in December 2018. The judgment of divorce, entered by default, incorporated the MSA. The parties had no children together. In pertinent part, paragraph 4(A) of the MSA required that defendant pay plaintiff Susan Steuber $5834[1] per month in limited duration alimony for a period of sixty months. The MSA provided that defendant's alimony obligation "shall terminate upon [plaintiff's death], [plaintiff's] remarriage, [defendant's] death or after [defendant] has paid [sixty] monthly payments, whichever occurs first. Alimony shall be tax deductible to [defendant] and taxable income to [plaintiff]."

Prior to the divorce, defendant was the sole owner of his interest in a business known as KMD Excavating, LLC (KMD) that the parties agreed would

---

[1] The MSA lists the value as $5834, but the Family Part judge used $5824 in her opinion. This minor difference is not germane to our analysis.

A-0600-19T2

remain defendant's asset free of any equitable distribution claim by plaintiff, and defendant agreed to be solely responsible for all business debts and liabilities. Paragraph ten of the MSA states that the parties were "advised to have [defendant's] business valued by a forensic expert and they have declined to do so at this time." The MSA also notes: "The parties acknowledge that [defendant's] business account has approximately $100,000 contained therein and that the business owns significant equipment and vehicles all with unknown values." The MSA noted there was no marital debt aside from the mortgage on the former marital home.

Since the entry of the JOD, defendant has not made one alimony payment.[2] No prior case information statements (CIS) were served with the motion papers. The MSA indicates the marital lifestyle was $10,500 per month.

On June 28, 2019, plaintiff moved before the Family Part seeking to enforce litigant's rights since she had not yet received any alimony payments from defendant. In response, on August 14, 2019, defendant cross-moved to modify or vacate the MSA under Rule 4:50-1 and terminate his alimony support obligation. He argued that he was entitled to relief or alternatively, had met his

---

[2] At the time of oral argument, defendant's counsel represented that this is incorrect, and a $5000 payment was made to plaintiff, which is not part of the record.

A-0600-19T2

burden of showing a prima facie case of changed circumstances, warranting a plenary hearing.

Defendant founded KMD in 2007. In 2015, he was awarded a lucrative contract for the installation of water meter pits for Middlesex Water Company that spanned July 2015 through June 2018, which led to a "substantial increase in income[.]" In June 2018, following a New Jersey Department of Labor (DOL) investigation concluding that defendant failed to pay prevailing wages, certify his payroll, and committed other regulatory violations, defendant lost the Middlesex Water Company contract. He sold inventory to satisfy bills.

The DOL investigation also resulted in an $11,176 lien assessment against KMD, which defendant was unable to pay. Allegedly unbeknownst to defendant, the DOL lien disqualified his company from bidding on other public works contracts. According to defendant, his business struggled after losing this contract, leading to termination of four KMD employees and the sale of four pieces of equipment. In his certification, defendant stated he was unaware KMD lost the contract until 2019.

After selling business vehicles he was unable to make payments on, defendant was audited by the Internal Revenue Service (IRS) for failing to declare the depreciation KMD had recaptured. Ultimately, the IRS fined

defendant's business $59,602 for this omission. Defendant did not provide any supporting documentation relative to the sale of equipment or confirming the IRS penalty amount with his cross-moving papers. Defendant's 2018 tax returns showed he or his business owned twenty-nine pieces of equipment, but he only sold four or five pieces of equipment. Schedule C of defendant's 2018 tax return indicated a total net gain of $283,216 from the sale of assets, and a $55,695 net gain in profits from the business. Later, defendant asserted neither he nor his company owned any of the equipment.

The MSA states that the agreement is based on "[defendant] having earned income in the amount of $280,000 (including in kind income for expenses paid on behalf of [defendant] by business and including additional imputed income) per year and [plaintiff] having earned income in the amount of $52,000 per year." Defendant certified his current monthly income is averaging less than $2500 or $30,000 annually. In his August 12, 2019 CIS submitted in connection with his cross-motion, defendant indicated his monthly A, B and C expenses are $7500, including a $945 monthly child support obligation for a child born from a prior marriage. Defendant certified his personal income from the business averaged $55,997 annually from 2015 through 2018.

A-0600-19T2

In response, plaintiff noted defendant knowingly waived his right to counsel in the negotiation and execution of the MSA; he was aware of his credit card and other debt when he signed the MSA; knew of the loss of the Middlesex Water Company contract prior to entering the MSA, and never paid alimony "prior to the onset of such calamities." Plaintiff emphasized defendant's request for relief under Rule 4:50-1 seeking to invalidate the MSA is extraordinary in nature and defendant should not benefit from his own "self-impoverishment."

Based on this record, the Family Part judge granted plaintiff's motion and denied defendant's cross-motion. The motion judge noted:

> So I have to say to really sum it up, I think the only issue is if there's possibly a change of circumstance and whether it's [voluntarily] or [involuntarily] caused at the hands of basically the [d]efendant. With regard to the [d]efendant's request to vacate the judgment and amend the terms, and I read his certification and I read the brief and, you know, that he didn't have the assistance of counsel, et cetera. There's [sic] so many problems with that argument. Namely, the [MSA] that was executed by the [d]efendant and notarized, which has numerous provisions addressing the concerns that he raises. Specifically, and I just want to go through the [MSA] with regard to, paragraph [nineteen], page [nine], independent counsel provision.

The judge highlighted that the notice defendant received from the DOL is dated July 9, 2019, and that he lost the Middlesex Public Water contract in June 2018, "which was prior [to] him signing the August 14, 2018 MSA. Thus,

6

[d]efendant signed the MSA provided that he would pay alimony with full knowledge that he did not have the contract." In addition, the judge noted defendant had three years of experience doing public sector work for the Middlesex Water Company, and of the three DOL violations, unpaid wages, inaccurately certified payroll, and failure to pay prevailing wage on utility work, only one violation was attributable to public utility work and prevailing wages.

In this light, the judge found defendant failed to establish changed circumstances under Lepis v. Lepis, 83 N.J. 139 (1980), Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990), and Smith v. Smith, 72 N.J. 350 (1977), to warrant a modification or suspension of his alimony payments. The judge found defendant was incredulous based upon misrepresentations made in his moving certification and proofs and declined to vacate the JOD and MSA under Rule 4:50-1. This appeal followed.

## II.

On appeal, defendant contends that the judge erred in denying his motion pursuant to Rule 4:50-1 seeking to modify the MSA based upon changed circumstances. Our standard of review of the Family Part's decision here compels that we affirm. As we noted in Larbig v. Larbig,

> [t]here is, of course, no brightline rule by which to measure when a changed circumstance has endured

A-0600-19T2

> long enough to warrant a modification of a support obligation. Instead such matters turn on the discretionary determinations of Family Part judges, based upon their experience as applied to all the relevant circumstances presented, which we do not disturb absent an abuse of discretion . . . . Neither compulsory discovery nor a plenary hearing is required until a movant provides sufficient evidence of a material changed circumstance.
>
> [384 N.J. Super. 17, 23 (App. Div. 2006) (citing Lepis, 83 N.J. at 157).]

"[A]ppellate review of a trial court's fact-finding function is limited. The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Crespo v. Crespo, 395 N.J. Super. 190, 193 (App. Div. 2007) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). Especially when considering "the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Ibid. (quoting Cesare, 154 N.J. at 413).

"Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." Larbig, 384 N.J. Super. at 21 (citing Innes v. Innes, 117 N.J. 496, 504 (1990)). Each individual motion for modification is particularized to the facts of that case, and "the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters."

Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)). We will not disturb the trial court's decision on alimony unless we conclude:

> . . . the trial court clearly abused its discretion, failed to consider all of the controlling legal principles, or [are] otherwise . . . satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the record after considering the proofs as a whole.
>
> [Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).]

Therefore, the judge's findings are binding so long as his or her determinations are "supported by adequate, substantial, credible evidence." Id. at 412. A "'[motion] judge's legal conclusions, and the application of those conclusions to the facts, are subject to our plenary review.'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Defendant argues the judge abused her discretion by not awarding him relief under Rule 4:50-1. Our Supreme Court has stated that, "[r]elief [under Rule 4:50-1] is granted sparingly." F.B. v. A.L.G., 176 N.J. 201, 207 (2003). Obtaining relief under "Rule 4:50-1 'requires proof of exceptional and compelling circumstances' as it is '[d]esigned to balance the interests of finality of judgments and judicial efficiency against the interest of equity and fairness.'"

A-0600-19T2

Eaton v. Grau, 368 N.J. Super. 215, 222 (App. Div. 2004) (quoting Harrington v. Harrington, 281 N.J. Super. 39, 48 (App. Div. 1955)) (alteration in original). "Whether exceptional circumstances exist is determined on a case-by-case basis according to the specific facts presented." In re Guardianship of J.N.H., 172 N.J. 440, 474 (2002).

In matrimonial matters, our Supreme Court has acknowledged that spousal agreements "are essentially consensual and voluntary in character and therefore entitled to considerable weight with respect to their validity and enforceability notwithstanding the fact that such an agreement has been incorporated in a judgment of divorce." Petersen v. Petersen, 85 N.J. 638, 642 (1981). Moreover, courts generally disfavor providing relief from bargained-for contracts, and alimony agreements are no exception. "For these reasons, 'fair and definitive arrangements arrived at by mutual consent should not be unnecessarily or lightly disturbed.'" Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999) (quoting Smith, 72 N.J. at 358).

Specifically, defendant contends credit card debt was not properly allocated between the parties, he was not represented by counsel, and the IRS penalty and DOL lien were not contemplated at the time of drafting. As the judge correctly noted, many of defendant's arguments directly dispute clearly

labelled provisions of the MSA. Moreover, defendant's economic downturn, even if true, does not rise to the level of exceptional circumstances warranting the extraordinary relief provided by <u>Rule</u> 4:50-1 as astutely pointed out by the judge. The judge's decision to deny defendant's cross-motion under <u>Rule</u> 4:50-1 was based upon substantial, credible evidence in the record. Thus, we discern no abuse of discretion.

Defendant's claim that he presented a prima facie case of changed circumstances is likewise without merit. We note alimony awards "define only the present obligations of the former spouses" and are generally subject to "review and modification". <u>Lepis</u>, 83 N.J. at 146. Courts can generally modify alimony "as circumstances may require." <u>Crews v. Crews</u>, 164 N.J. 11, 24 (2000) (citing <u>Lepis</u>, 83 N.J. at 145). Importantly, the existence of an agreement regarding alimony, such as an MSA, does not prevent a former spouse from seeking judicial review or modification based upon a showing of changed circumstances. <u>Glass v. Glass</u>, 366 N.J. Super. 357, 370 (App. Div. 2004) (citing <u>Miller v. Miller</u>, 160 N.J. 408, 419 (1999)).

In <u>Lepis</u>, our Supreme Court noted that as a threshold matter, a movant has the burden of demonstrating a prima facie case of changed circumstances before the court orders discovery, full financial disclosure, or a plenary hearing.

A-0600-19T2

83 N.J. at 157-59.  Similarly, "[w]hen [a] movant is seeking modification of an alimony award, that party must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself."  Lepis, 83 N.J. at 157.

There are a number of changed circumstances that may warrant a modification of an alimony order.  In evaluating an application for alteration of an alimony order the court may "justly consider all relevant circumstances[.]"  Martindell, 21 N.J. at 355.  Relevant circumstances generally include the supporting party's increased or decreased financial resources, or the dependent spouse's increased or decreased financial needs.  Ibid.  A substantial decrease in the supporting spouse's financial resources can alone serve as grounds for a reduction in alimony.  Ibid.

However, courts acknowledge that income earned through employment "is not the only measure of the supporting spouse's ability to pay that should be considered by a court."  Miller, 160 N.J. at 420.  Courts should also consider other factors, including "[a] supporting spouse's potential to generate income[.]"  Ibid. (citing Mahoney v. Mahoney, 91 N.J. 488, 505 (1982)).  Also, a supporting spouse's "capacity to earn by 'diligent attention to . . . business' [is an] important

factor[] for a court to consider in the determination of alimony modification." Ibid. (quoting Innes, 117 N.J. at 503).

Here, defendant alleges his annual income has declined from approximately $280,000 when he signed the MSA, to a current level of merely $30,000. He also contends that this substantial decrease in financial resources is sufficient to justify modification of his alimony obligations under the MSA. However, the record shows defendant has not attempted to solicit new clients, bid on other contracts, or pay any amount of the DOL lien. With a "diligent attention to business" defendant might regain earlier levels of success. Miller, 160 N.J. at 420-21. Defendant has undisputed past success, demonstrating he has "potential to generate income" which the judge properly took into consideration. Id. at 420.

Courts are more circumspect in situations dealing with a self-employed movant's representations regarding financial status. In Donnelly, the movant, an attorney, argued that since his law practice was struggling, he should be entitled to a downward modification of his alimony obligation. Donnelly v. Donnelly, 405 N.J. Super. 117, 128-29 (App. Div. 2009). We noted, "'what constitutes a temporary change in income should be viewed more expansively when urged by a self-employed obligor,'" because they generally are "'in a better

A-0600-19T2

position to present an unrealistic picture of his or her actual income than a W-2 earner.'" Ibid. (quoting Larbig, 384 N.J. Super. at 23). And, "the focus must also be on the length of time that had elapsed since the last milepost in these post-judgment proceedings." Id. at 127-28.

In Larbig, the movant filed for modification "a mere twenty months after the parties' execution of the [Property Settlement Agreement] and the entry of the [JOD]," and we cautioned the alleged change in circumstance could not have become permanent in such a short time. 384 N.J. Super. at 22. Here, only eight months passed between the entry of the JOD and the filing of defendant's cross-motion. We discern no basis to disturb the judge's conclusion that defendant was not entitled to a modification of his alimony obligation.

Defendant next argues the judge erred by failing to hold a plenary hearing before denying his cross-motion. We are not persuaded. "A hearing is not required or warranted in every contested proceeding for the modification of a judgment or order relating to alimony." Murphy v. Murphy, 313 N.J. Super. 575, 580 (App. Div. 1998); see also Lepis, 83 N.J. at 159 (holding "a party must clearly demonstrate the existence of a genuine issue as to a material fact before a hearing is necessary," and explaining that "[w]ithout such a standard, courts would be obligated to hold hearings on every modification application"). A

plenary hearing should be ordered "only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful." Murphy, 313 N.J. Super. at 580 (quoting Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976)). A material factual dispute is one that "bear[s] directly on the legal conclusions required to be made and [such] disputes can only be resolved through a plenary hearing." Spangenberg, 442 N.J. Super. at 540-41.

The court has the power "to hear and decide motions . . . exclusively upon affidavits." Shaw, 138 N.J. Super. at 440. However, "[i]t is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful in deciding such factual issues, that a plenary hearing is required." Ibid. "[W]here the need for a plenary hearing is not so obvious, the threshold issue is whether the movant has made a prima facie showing that a plenary hearing is necessary." Hand v. Hand, 391 N.J. Super. 102, 106 (App. Div. 2007). We review a court's decision whether a plenary hearing is required for an abuse of discretion. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

We discern no abuse of discretion in the judge's decision not to conduct a plenary hearing. Based on the judge's review of the certifications of the parties

and after hearing oral argument, she concluded there were no disputed facts requiring a plenary hearing. Contrary to defendant's contention, the judge properly determined that a plenary hearing would not have assisted in gathering information about his business and income essential to the disposition of the cross-motion. We therefore see no basis to reverse the judge's determination.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

16

A-0600-19T2