713 A.2d 552

ALICE MURPHY, PLAINTIFF/RESPONDENT, v. JOHN JAMES MURPHY, DEFENDANT/APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted June 2, 1998—Decided July 6, 1998.

Before Judges PRESSLER, WALLACE and CARCHMAN.

*D.F. Moore Craig,* attorney for appellant.

*Alice Murphy,* respondent pro se filed a brief.

*James P. Yudes, P.C.,* respondent pro se; (*Elizabeth E. Bedell,* on the brief).

The opinion of the court was delivered by

WALLACE, Jr., J.A.D.

This is an appeal from a post-divorce judgment order granting plaintiff's motion to increase her alimony. The order also directed defendant to establish a trust fund for plaintiff's benefit in the event of his death and required defendant to pay a portion of the counsel and accounting fees. On appeal, defendant contends that the trial judge abused his discretion in: (1) increasing the alimony award from $60 per week to $650 per week; (2) making the alimony increase retroactive; (3) not requiring a hearing regarding the award of fees; (4) granting the fee awards; and (5) ordering a trust fund of $335,000 to provide for alimony in the event of his death. We reverse.

The parties were married on February 23, 1953, and nine children were born of the marriage. In 1977, defendant was earning approximately $14,000 gross annual income from his bus company. Plaintiff was not employed outside the home during most of the marriage. On July 15, 1977, a judgment of divorce was entered. A subsequent order for equitable distribution provided that plaintiff receive the marital home valued at $37,500; a one-half interest in the bus company valued at $63,178.89; alimony of $60 per week; and child support of $80 a week for the four then unemancipated children. No appeal was taken from this judgment.

During the ensuing sixteen years, defendant's income increased substantially as the bus business prospered. Plaintiff's income during these years remained low. Plaintiff testified that after the

divorce, she took on various jobs to support herself financially. She stated she delivered newspapers and worked as a housekeeper and babysitter. In 1988, plaintiff sold the marital home for $175,000 and moved to Georgia where she purchased a home for $129,000. As part of the purchase, plaintiff assumed a $53,800 mortgage. Upon moving to Georgia, plaintiff worked alternately as a clerk at J.C. Penny, a factory worker, a babysitter, and a warehouse employee earning minimum wage.

By motion returnable June 24, 1994, plaintiff for the first time sought an increase in alimony, health and life insurance benefits, and payment of counsel fees. Defendant cross-moved for direct alimony payments and an order of annulment. The motion judge was satisfied that the plaintiff demonstrated changed circumstances and on June 24, 1994, directed discovery and ordered defendant to pay $2,000 of plaintiff's counsel fees. The judge reserved on all other issues in plaintiff's motion until an August hearing and denied defendant's cross motion. Following the August hearing, the motion judge granted a temporary increase of alimony to $200 a week retroactive to June 24, 1994. He denied, without prejudice, plaintiff's application for health insurance and ordered defendant to name plaintiff as a beneficiary under a life insurance policy.

Following discovery, hearings were held over a period of eight days. As noted above, the judge awarded a total of $650 per week in alimony to plaintiff, retroactive to the date of the filing of the motion, directed the establishment of a trust fund, and awarded plaintiff counsel fees. This appeal followed.

 The applicable legal principles are well-settled. The purpose of alimony is to provide the defendant spouse with a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage. *Innes v. Innes*, 117 *N.J.* 496, 503, 569 *A.2d* 770 (1990); *Mahoney v. Mahoney*, 91 *N.J.* 488, 501–02, 453 *A.2d* 527 (1982); *Lepis v. Lepis*, 83 *N.J.* 139, 150, 416 *A.2d* 45 (1980); *N.J.S.A.* 2A:34–23; *Khalaf v. Khalaf*, 58 *N.J.* 63, 69, 275 *A.2d* 132 (1971). The

supporting spouse's obligation is established at a level that will maintain that standard. *Innes, supra,* 117 *N.J.* at 503, 569 *A.2d* 770. In accordance with this principle, our courts have recognized "changed circumstances" that warrant modification. *Lepis, supra,* 83 *N.J.* at 151, 416 *A.2d* 45. The party seeking modification has the burden of showing such "changed circumstances." *Id.* at 157, 416 *A.2d* 45. In that respect, "[a] *prima facie* showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status." *Ibid.* Once a *prima facie* showing is made, the court may order further discovery. *Ibid.* After completion of discovery, the court must decide whether to hold a hearing. *Id.* at 159, 416 *A.2d* 45. A hearing is not required or warranted in every contested proceeding for the modification of a judgment or order relating to alimony. "It is only where the affidavits show that there is a genuine issue as to a material fact, and that the trial judge determines that a plenary hearing would be helpful" that such a course must be taken. *Shaw v. Shaw,* 138 *N.J.Super.* 436, 440, 351 *A.2d* 374 (App.Div.1976).

█ Against this backdrop, we conclude that the trial judge's application of those principles in this case was flawed. The trial judge found that:

> although the plaintiff's figures on her Case Information Statement are, ... at times inflated, and her testimony at times somewhat less than credible, her standard of living, nevertheless, ... has diminished to the point where she can no longer support herself on her current alimony.

The judge also found that defendant had ample resources available to pay an increase in alimony based on the success of the bus company since the divorce in 1977. We have no quarrel with these findings. However, while the trial judge made a brief reference that the quality of life during the marriage must be considered, what gives us concern is that the judge essentially made no finding concerning the standard of living during the marriage. Rather, the judge focused on our comment in *Guglielmo v. Guglielmo,* 253 *N.J.Super.* 531, 543–44, 602 *A.2d* 741 (App.Div.1992), where we noted the dependent spouse should not be confined to the precise lifestyle enjoyed during the parties' last

year together. However, in *Guglielmo*, the supporting spouse sought an increase within six years after the divorce. Here, plaintiff waited seventeen years before seeking an increase. Under these circumstances, the standard of living which existed at the time of the divorce should have been the main focus. Plaintiff should have been awarded an increase in alimony required to maintain her previous standard of living so long as defendant was financially able to pay any increase.

Moreover, we note that the bus business was valued at the time of the divorce judgment, and plaintiff was awarded a fifty percent equitable share. Thus, it was error for the judge to focus on whether plaintiff had contributed during the marriage to the financial success of defendant's business. Defendant's success in the business was only relevant to consider his ability to pay any increase in alimony.

Unfortunately, the trial judge did not determine the standard of living at the time of the divorce despite testimony on the issue at the hearings. To be sure, there was ample evidence of changed circumstances based on inflation and defendant's increase in income since 1977. However, as noted above plaintiff had not sought an increase in seventeen years. It was incumbent upon her to show proof of her standard of living over the years, including the jobs that she had held to help justify her need for an increase now. Moreover, the judge did not explain why he concluded that plaintiff was "capable only of menial jobs." *See Lepis, supra,* 83 *N.J.* at 155, 416 *A.2d* 45 ("[a] closer look should have been taken at the supported spouse's ability to contribute to his or her own maintenance ..."); *Aronson v. Aronson,* 245 *N.J.Super.* 354, 364, 585 *A.2d* 956 (App.Div.1991)("[a]limony is neither a punishment for the payor nor a reward for the payee. Nor should it be a windfall for any party.") Consequently, the matter must be remanded for a finding concerning plaintiff's standard of living at the time of divorce, her ability to contribute to that standard and the amount of any increase in alimony reasonably required to maintain that standard.

We add a few additional comments. Plaintiff's need, in part, resulted from her improvements to her home in Georgia. Plaintiff sold the mortgage free marital home in 1988, netting approximately $171,000. She purchased a larger home in Walkinsville, Georgia for $129,000. She was able to assume an existing mortgage and needed only $70,785 of the proceeds from the sale of the New Jersey house to conclude the Georgia purchase. In the three years after the purchase, plaintiff spent approximately $34,000 to renovate and landscape her Georgia home.

■ In her Case Information Statement (CIS) dated April 28, 1994, the only liability plaintiff listed was a $50,000 mortgage to her daughter and her son in-law on the Georgia home. However, plaintiff's CIS dated October 7, 1996, showed a mortgage balance of $58,425, a family debt of $10,000 and other liabilities, including professional fees. The trial judge initially excluded counsel and accounting fees of approximately $49,000 from this part of his analysis. The judge also found that the $10,000 family debt was not a true liability. After finding that plaintiff's current predicament was partially self-imposed in terms of the liabilities, in addition to an increased alimony award of $545, the judge ordered defendant to pay 70% of plaintiff's liabilities or an additional $105 per week. We find no support in the record for this additional award.

■ More importantly, the judge ultimately made the award of the increase in alimony retroactive to the date of plaintiff's motion in 1994. We find no abuse of discretion in this regard. However, the additional assessment of $105 per week was based on credit card bills and similar liabilities incurred since the filing of the motion. In our view, the requirement to pay these bills was a duplication of the retroactive alimony award. Once the judge decided to make the award of increased alimony retroactive, it was an abuse of discretion to include the additional assessment of $105 a week as part of the alimony award.

■ In light of our remand for a redetermination of the level of the increase in alimony, we comment briefly on the remaining issues. With regard to defendant's contention that a hearing was required prior to the award of fees and that the fees awarded were excessive, we find no merit. *R.* 2:11–3e(1)(E). At the April 3, 1997 hearing to address the order resulting from the judge's decision to increase alimony and to award fees, defense counsel made no argument addressed to the fees awarded. More importantly, we find no abuse of discretion in the amount of the fees awarded. The trial court carefully considered plaintiff's needs, defendant's ability to pay, and the parties good faith in instituting and defending the action. *Williams v. Williams,* 59 *N.J.* 229, 233, 281 *A.*2d 273 (1971). We find no reason to interfere with the fees awarded.

Finally, defendant argues that the trial court abused its discretion in ordering the establishment of a $335,000 *Jacobitti* trust. In *Jacobitti v. Jacobitti,* 135 *N.J.* 571, 574–75, 641 *A.*2d 535 (1994), our Supreme Court permitted the establishment of a trust as an "appropriate equitable remedy to fulfill the Legislature's intent in authorizing life insurance for the protection of a defendant spouse 'in the event of the payor spouse's death.'" *See N.J.S.A.* 2A:34–25.

Here, defendant claimed that he was unable to obtain life insurance. Plaintiff claimed her only source of income was alimony. The court determined that a *Jacobitti* trust was necessary, explaining:

> The parties before this Court are in a predicament that calls in the Court's view for the creation of a trust similar to that in *JACOBITTI.* The defendant, although financially secure, is unable, according to testimony and evidence presented to the Court to possibly pass a physical and obtain life insurance due to his age and a number of health problems.
>
> Plaintiff is also a person at her age not in the best of health either. And more importantly, is reliant on the alimony she receives in large part even with imputed income, and will be severally financially distressed if nothing is provided for her if defendant predeceases her.
>
> Therefore, the Court will order that the defendant set up a $335,000 trust that provides "unless defendant agrees otherwise on plaintiff's death, the trust proceeds will revert to him, his heirs or other legal designees, but not to charity ..."

The judge also noted that such a trust would be moot, however, if "[defendant] miraculously is able to obtain a life insurance policy naming [plaintiff] as beneficiary for an acceptable amount, i.e. at least $250,000." Defendant was given several options in fulfilling his obligation to pay alimony to plaintiff. We find no abuse of discretion in the ordering of the trust, but we are compelled to remand for a determination of the amount of the trust in light of our remand to redetermine the amount of the increase in alimony.

In sum, we remand for a redetermination of the amount of the increase in alimony which shall be retroactive to June 24, 1994, the initial return date of plaintiff's motion for an increase. We affirm the award of fees and the institution of a trust to protect plaintiff in the event of defendant's death. However, we remand for reconsideration of the amount of the trust in relation to the amount of alimony ultimately awarded.

Reversed.