**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2112-18T4

GARY EDDEY,

     Plaintiff-Respondent,

v.

ILENE EDDEY,

     Defendant-Appellant.

_____

Submitted March 17, 2020 – Decided April 29, 2020

Before Judges Hoffman, Currier and Firko.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-0795-02.

Simon, O'Brien & Knapp, attorneys for appellant (John T. Knapp, of counsel and on the briefs; Sarah E. Kapitko, on the brief).

Greenbaum, Rowe, Smith & Davis LLP, attorneys for respondent (Mark H. Sobel and Barry Scott Sobel, of counsel and on the brief).

PER CURIAM

Defendant Ilene Eddey appeals from a December 11, 2018 Family Part order that granted plaintiff Gary Eddey's motion to terminate his alimony and life insurance obligations. Applying N.J.S.A. 2A:34-23(j)(3), the Family Part judge concluded the factors weighed in favor of terminating plaintiff's alimony and life insurance obligations, and his retirement was undertaken in good faith. We affirm.

I.

The following factual history is derived from the motion record. After almost twenty-seven years of marriage, plaintiff and defendant divorced in 2003. The final judgment of divorce (JOD) incorporated their property settlement agreement (PSA). It required plaintiff to "pay [defendant] permanent alimony in the sum of $40,000 per year. Said payments shall be paid weekly at the rate of $770 per week." The PSA also provided that plaintiff maintain life insurance for the benefit of defendant "for so long as his alimony obligation lasts." The PSA did not address the consequences of plaintiff's retirement.

Both parties were actively employed when they divorced. Plaintiff worked as a medical doctor and defendant was employed as a teacher. Their three children are now emancipated.

A-2112-18T4

Under the JOD, defendant kept the marital residence, although she was required to refinance the existing mortgages and buy-out plaintiff's equity interest in the home. The parties equitably divided their retirement accounts and two defined benefit plans, including defendant's pension. They evenly divided their $5700 credit card debt, and plaintiff agreed to pay the $11,000 IRS debt for the 2001 tax year.

In January 2017, defendant retired from her teaching position. Later that year, in October, plaintiff advised defendant he planned to retire at the end of the year, when he turned sixty-six years old. At the time, plaintiff worked as an "on call" physician for a special education hospital for individuals with developmental disabilities. Plaintiff chose to retire partly because of the "stressful and physically and mentally demanding schedule" his position entailed. In April 2016, plaintiff was terminated from a different position and found it difficult to become re-employed. After obtaining the new position for the one-and-a-half-year period, he decided to retire.

In an effort to avoid litigation upon plaintiff's imminent retirement, the parties exchanged financial information in December 2017. No agreement was reached. On January 5, 2018, plaintiff retired at the age of sixty-six. While

plaintiff presently has no known health conditions, defendant has significant medical issues.

On May 30, 2018, plaintiff filed a motion to permanently terminate his alimony and life insurance obligations and for an award of counsel fees. In his moving certification, plaintiff contended he was entitled to relief because he reached a good faith retirement age and met the statutory factors required by N.J.S.A. 2A:34-23(j)(3). He also was eligible for social security benefits.

Defendant opposed plaintiff's motion on the basis that he failed to completely disclose his income information and she cross-moved for counsel fees. On August 9, 2018, the prior Family Part judge denied plaintiff's motion "due to the lack of information provided by [p]laintiff, which . . . prevents the [c]ourt from determining if a prima facie case of changed circumstances has been established." Specifically, the judge noted that plaintiff failed to include a current case information statement (CIS) with his motion.

On September 27, 2018, plaintiff re-filed his motion and included an updated CIS and documents pertaining to his social security benefits. Defendant again opposed the motion, contending that plaintiff failed to disclose all of his assets and anticipated income streams from his annuities and other sources, and

A-2112-18T4

cross-moved for counsel fees.  In reply, plaintiff certified that his only current source of income is his social security payments.

On December 7, 2018, the subsequent Family Part judge heard oral argument on the motions.  In his statement of reasons, the judge concluded that "the totality of the factors . . . weigh in favor of terminating alimony and no factor, either individually or cumulatively, weighs against terminating [p]laintiff's alimony obligation."

In reaching his decision, the judge considered the factors under N.J.S.A. 2A:34-23(j)(3) in holding that plaintiff's alimony and life insurance obligation be terminated.  Notably, the judge found plaintiff's desire to retire after facing termination from his previous job and upon attaining retirement age was reasonable and did not reflect an improper motive.  Defendant's expectation that plaintiff would continue to work in perpetuity was deemed unreasonable by the judge.

The judge based his decision on a number of findings.  Post-retirement, plaintiff's income is $2545 per month from social security benefits.  Excluding real estate, plaintiff has liquid assets of $1,770,467, including his retirement annuity of $683,931, which does not vest for another five years.  While defendant claims plaintiff should have included his New York condominium in

A-2112-18T4

his list of assets, the judge did not find the omission fatal because "it is clear that over the proximate years [p]laintiff's [s]ocial [s]ecurity income will be inadequate to cover his alimony obligation . . . requir[ing] [him] to deplete his liquid assets in order to subsidize . . . payments alone (before paying any of his own monthly expenses)."

The judge found plaintiff spends $13,914 per month, including $3333 in alimony payments and $688 in life insurance premiums.  The judge noted that "[p]laintiff will be unable to afford his current lifestyle" if his alimony obligations continued post-retirement.

The judge found that defendant continued to work until her retirement in January 2017.  During the latter stages of her career, defendant earned $143,244 in 2015 and $136,402 in 2016, and has total assets of $1,222,959.[1]  The judge noted that defendant's monthly net pension and social security benefits totaled $4072.  With estimated monthly expenses of $6206.35, like plaintiff, defendant's income will not sufficiently cover her current lifestyle without depleting her retirement assets.

Given those facts, the judge concluded:

> Overall, while there is a disparity in the parties' assets, and [p]laintiff could liquidate assets to continue

---

[1] Excluding estimated real estate value, defendant has assets worth $794,959.01.

A-2112-18T4

alimony payments, the court finds that both parties have sufficient assets to supplement their own monthly incomes to support and maintain their own lifestyles for the indefinite future.

. . . Based upon [d]efendant's current income from her pension and social security as well as the assets she has amassed, the court does not find that she is financially dependent upon [p]laintiff or that the retirement and termination of alimony will be materially detrimental to [d]efendant. Rather, the court finds that she has adequate assets to supplement her retirement income so as to sustain her lifestyle.

. . . [T]he court does note that [p]laintiff has paid [d]efendant alimony for more than [seventeen-and-a-half years], which equates to a[t] least $700,000 in non-taxable payments to [d]efendant. The court finds that based upon [d]efendant's continued employment following the parties' 2003 divorce until January 2017 and the alimony she received, [d]efendant had the opportunity to adequately save for retirement. While perhaps [d]efendant could have save[d] more for retirement, the court finds that she has adequate assets to supplement her retirement income so as to sustain her lifestyle.

The judge granted plaintiff's motion thereby terminating his alimony and life insurance obligations, and denied both parties' motions for counsel fees.

On appeal, defendant contends the judge improperly concluded that: (1) plaintiff established changed circumstances warranting termination of his alimony and life insurance obligations; (2) discovery and a plenary hearing were unnecessary; (3) plaintiff could no longer afford to pay alimony and defendant

no longer needed alimony; (4) plaintiff could terminate life insurance for defendant; (5) alimony received by defendant was tax-free; and (6) plaintiff had disclosed all relevant sources of income.

## II.

We accord "great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Family Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Family Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (quoting Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

The court is required to examine and weigh a list of objective considerations when it reviews an alimony termination or modification request for an obligor who has retired. Landers v. Landers, 444 N.J. Super. 315, 321

(2016). If the alimony order pre-dates September 10, 2014, the request for modification or termination must be reviewed under N.J.S.A. 2A:34-23(j)(3). That section expressly requires "[i]n making its determination, the court shall consider the ability of the obligee to have saved adequately for retirement . . . [and] whether the obligor, by a preponderance of the evidence, has demonstrated that modification or termination of alimony is appropriate . . . ." N.J.S.A. 2A:34-23(j)(3). The obligee's ability to have adequately saved is set "apart from other considerations and require[s] . . . explicit analysis." Landers, 444 N.J. Super. at 324.

> The statute requires the court to consider other factors, which include:
>
> > (a) The age and health of the parties at the time of the application;
> >
> > (b) The obligor's field of employment and the generally accepted age of retirement for those in that field;
> >
> > (c) The age when the obligor becomes eligible for retirement at the obligor's place of employment, including mandatory retirement dates or the dates upon which continued employment would no longer increase retirement benefits;
> >
> > (d) The obligor's motives in retiring, including any pressures to retire applied by the obligor's employer or incentive plans offered by the obligor's employer;

(e) The reasonable expectations of the parties regarding retirement during the marriage or civil union and at the time of the divorce or dissolution;

(f) The ability of the obligor to maintain support payments following retirement, including whether the obligor will continue to be employed part-time or work reduced hours;

(g) The obligee's level of financial independence and the financial impact of the obligor's retirement upon the obligee; and

(h) Any other relevant factors affecting the parties' respective financial positions.

[N.J.S.A. 2A:34-23(j)(3)(a) to (h).]

Importantly, alimony orders define "only the present obligations of the former spouses," and therefore, are always subject to "review and modification" upon a showing of "changed circumstances." Crews v. Crews, 164 N.J. 11, 24 (2000) (quoting Lepis v. Lepis, 83 N.J. 139, 146 (1980)); see also N.J.S.A. 2A:34-23 ("[Alimony orders] may be revised and altered by the court from time to time as circumstances may require."). The moving party "bears the burden of making a prima facie showing of changed circumstances" to initiate this modification. Crews, 164 N.J. at 28 (quoting Miller v. Miller, 160 N.J. 408, 420 (1999)). Changed circumstances generally means a recent inability to support himself or herself. Lepis, 83 N.J. at 157.

Defendant argues the Family Part judge improperly determined that plaintiff established a prima facie case of changed circumstances. She also contends the judge failed to consider relevant factors.

We do not agree that the judge improvidently weighed the statutory factors. The judge's ruling considered each of the factors under N.J.S.A. 2A:34-23(j)(3). Moreover, the judge correctly noted that regardless of whether "retirement" was specifically included in the PSA, "the current state of the law . . . recognizes [plaintiff's] ability to make this application based upon good-faith retirement." Further, the judge found there was no generally accepted age for retirement in plaintiff's field.

In addition, the judge made detailed findings about the parties' financial situations. He found plaintiff has social security income of $2545 per month and liquid assets of $1,770,467, excluding real estate, but inclusive of $683,931 in annuities, which will not vest for another five years. Saliently, the judge considered plaintiff's age, health, and reasons for retiring in making his findings.

The judge also explained that defendant failed to state her income. Her CIS reflected she had total assets of $1,222,959. Her monthly net pension and social security income is $4072.

Subsection (j)(3) emphasizes that the court "shall consider the ability of the obligee to have saved adequately for retirement . . . ." This section "elevates the ability of the obligee to have saved adequately for retirement [over the other factors] . . . setting it apart from other considerations and requiring its explicit analysis." Landers, 444 N.J. Super. at 324 (citing N.J.S.A. 2A:34-23(j)(3)). This consideration is a primary factor in the analysis.

Defendant had a clear ability to make appropriate retirement arrangements. The judge found not only that "[d]efendant had the opportunity to save for retirement" but that she, in fact, had "adequate assets to supplement her retirement income so as to sustain her lifestyle." The judge was correct in his analysis.

Despite defendant's contention that she has health conditions requiring treatment and monitoring, the judge aptly found "she provide[d] no evidence that any treatments since retirement have been uncovered or that she has had to pay for any treatments out-of-pocket causing any material depletion of her financial resources." Her health issues did not justify denying plaintiff's motion on account of his changed circumstances.

The judge also made findings under the balance of the (j)(3) factors as follows:

> Based upon [d]efendant's current income from her pension and social security as well as the assets she has amassed, the court does not find that she is financially dependent upon [p]laintiff or that the retirement and termination of alimony will be materially detrimental to [d]efendant. Rather, the court finds that she has adequate assets to supplement her retirement income so as to sustain her lifestyle.

There was ample, credible evidence in the record to terminate alimony on the basis of plaintiff's retirement. We are satisfied the judge did not abuse his discretion in balancing the relevant factors. The judge's decision was based upon a thorough analysis of the statutory factors set forth in N.J.S.A. 2A:34-23(j)(3), with proper consideration given to the entire record.

Furthermore, the judge did not err by not conducting a plenary hearing. It is not "required or warranted in every contested proceeding for the modification of a judgment or order relating to alimony." Murphy v. Murphy, 313 N.J. Super. 575, 580 (1998). Otherwise, "courts would be obligated to hold hearings on every modification application." Lepis, 83 N.J. at 159. Hearings must only be held where "affidavits show that there is a genuine issue as to a material fact, and . . . the trial judge determines that a plenary hearing would be helpful . . . ." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976).

Here, the judge determined that plaintiff's alimony obligation should be terminated "[b]ased upon the preponderance of the evidence" without the need

13

for additional information.  As a plenary hearing was unnecessary, the judge did not abuse his discretion in denying the request.  See Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015).

Lastly, we address defendant's argument that the judge mischaracterized her alimony payments as tax-free, warranting reversal.  Specifically, she challenges the judge's finding that "[p]laintiff has paid [d]efendant alimony for more than [seventeen-and-a-half years], which equates to a[t] least $700,000 in non-taxable payments to [d]efendant."  In defendant's view, the judge erroneously concluded she was thereby able to adequately save for retirement.  Again, we reject defendant's argument.

Our careful review of the record shows the judge properly noted "[d]efendant's continued employment following the parties' 2003 divorce until January 2017 and the alimony she received . . . ."  Put into context, the judge considered defendant's earned income in tandem with the alimony she received.  The judge's conclusion was not dependent on whether the alimony was taxable.  Moreover, there is sufficient, credible evidence in the record to show defendant has adequate assets to augment her retirement income.  Therefore, we reject defendant's argument.

A-2112-18T4

Other arguments raised by defendant lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION