**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2775-21

PETER SCHMITZ,

    Plaintiff-Appellant,

v.

SUSAN FAIRHURST,

    Defendant-Respondent.

_____

Argued November 1, 2023 – Decided November 21, 2023

Before Judges Firko and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FM-03-1258-20.

Ronald G. Lieberman argued the cause for appellant (Adinolfi, Lieberman, Burick, Roberto & Molotsky, PA, attorneys; Ronald G. Lieberman, on the briefs).

Janine Danks Fox argued the cause for respondent (Szaferman, Lakind, Blumstein & Blader, PC, attorneys; Janine Danks Fox, of counsel and on the brief).

PER CURIAM

In this post-judgment matrimonial matter, plaintiff Peter Schmitz appeals from portions of the Family Part's April 21, 2022 order denying his motion to terminate or modify his alimony obligations based on provisions contained in the parties' marital settlement agreement (MSA).[1]  He also appeals from the order granting defendant Susan Fairhurst's cross-motion for summary judgment precluding plaintiff from seeking modification and requiring him to pay arrears with interest and counsel fees.  We are constrained to reverse and remand because the judge did not conduct a plenary hearing to resolve the parties' sharply conflicting factual assertions regarding the alimony provisions and the representations each made to the other during the negotiation of the MSA.

I.

The parties were married in October 1985 and divorced in October 2005. They incorporated their MSA into their dual final judgment of divorce. Defendant didn't work outside the home during the marriage.  At the time of their divorce, defendant became employed after raising the parties' children.  Her annual income was $40,000.  Plaintiff worked in the aviation industry and was the sole wage earner for the majority of the marriage.  At the time of their

_____

[1] Specifically, plaintiff appeals from paragraphs 1, 2, 3, 4, 8, 10, 11, 12, 13, 14, 15, 16, 17, 19, 21, 22, 23, and 26 of the order.

separation in 2001, plaintiff earned a gross income of $248,500. The MSA

provided plaintiff was to pay defendant alimony at the rate of $7,083 per month

or $85,000 per annum.

Article II, paragraph 4 of the MSA states alimony would terminate by any

one or more of the following:

> Termination of Obligation: The terms of this Article shall continue for the natural lives of the parties, unless terminated by any one or more of the following:
>
> (a) Death of Wife;
>
> (b) Remarriage of Wife or her cohabitation with an unrelated male under conditions which the law then in effect indicates is a basis to terminate or modify alimony;
>
> (c) Repudiation or modification of this Agreement by mutual consent of the parties, provided that said repudiation or modification is in writing and duly signed and witnessed;
>
> (d) Death of Husband. However, nothing herein contained shall be deemed to relieve Husband's estate of any obligations incurred hereunder by Husband and vested with Wife prior to Husband's death. Thus, any alimony that shall be due as of the date of death shall continue to be payable, although there shall be no obligation to make payments for any time period after said date of death. Should Wife predecease Husband, then and in that event, Wife, for herself, her heirs, executors, administrators and assigns, hereby agrees that all rights under this Article, except as provided in this subparagraph, shall terminate.

Article II, paragraph 5 addresses renegotiation of alimony:

> Renegotiation Upon Occurrence of Certain Events: The payments provided for in this Article may be renegotiated upon Husband's request upon his retirement from active employment or upon Husband suffering from any medically determinable physical or mental impairment that renders him unable to engage in any substantial gainful employment or significantly reduces his income.
>
> Wife agrees not to seek any modification in alimony unless she becomes disabled and unable to work and she specifically waives her right to modify based on increases in Husband's income or the termination of child support.

Article V, paragraph 1 provides for life insurance to secure alimony and states plaintiff's obligation to maintain said insurance shall end upon the termination of his obligation to provide alimony as set forth in Article II, paragraph 4, "but is subject to modification when alimony is reviewed." Article XI, paragraph 1 provides for "Final Agreement; No Merger," . . . "[o]ther than upon a showing of substantially changed circumstances, neither party . . . shall seek alimony or support contrary to the provisions of this Agreement." (emphasis added). And, Article XIV, paragraph 3 refers to "situs" and states alimony was "entered into in the State of New Jersey and shall be construed and interpreted under and in accordance with the laws of the State of New Jersey."

4

Post-divorce, plaintiff's earnings increased each year from $470,602 in 2006, to a peak of $1.6 million in 2015. Thereafter, plaintiff's earnings significantly declined from $1.19 million in 2016, to $445,648 in 2017, to $376,515 in 2018, to $32,298 in 2019. In 2016, plaintiff lost his job and was unable to maintain consistent employment in his field.

In May 2019, plaintiff filed a motion with an accompanying certification to terminate or modify his alimony obligations based upon loss of employment and substantially reduced financial circumstances. Plaintiff stated he started his career as a pilot and then worked in business management positions. Following the divorce, plaintiff certified he changed jobs to pursue better opportunities, but in 2016 was terminated due to the employer's downsizing. Four months later, plaintiff secured new employment but earned less money. Because of the "exceptionally small specialty field" in which plaintiff had been employed in the past, he was unsuccessful in obtaining a new job.

Plaintiff stated he continued to make alimony payments that fell short of his obligation because that was all he could afford. He also received unemployment benefits in the amount of $275 per week from the State of Florida[2] and sent one-half of that amount to defendant towards payment of his

---

[2] Plaintiff relocated to Florida after the parties' divorce.

alimony obligation. Plaintiff certified he had no liquid savings or funds to meet the alimony obligation and submitted a current case information statement (CIS) to support his argument.

Plaintiff claimed his lifestyle has been downgraded. By way of example, plaintiff stated he sold his car and replaced it with a more affordable one; he moved to a smaller home; he invaded his retirement savings before age 59 1/2 and incurred penalties and taxes; and he cannot meet his budget. In contrast, plaintiff certified that defendant enhanced her lifestyle following the divorce by renovating her home, buying a sports car, and taking vacations. Plaintiff also moved to terminate or modify his obligation to maintain life insurance to secure his alimony obligation pursuant to Article V, paragraph 1 of the MSA. Plaintiff is currently self-employed.

Defendant cross-moved to deny plaintiff's motion, hold him in violation of litigant's rights for failing to abide by his alimony obligations, to direct him to pay alimony arrearages of $47,000, and for counsel fees and costs. Defendant argued plaintiff did not satisfy any of the limited criteria set forth in Article II, paragraph 4 of the MSA to warrant termination or modification of his alimony and alimony related obligations. Defendant also cross-moved to seize plaintiff's

6

retirement assets to secure her alimony payments. She also questioned whether plaintiff's loss of employment was "involuntary or caused by his own actions."

On October 10, 2019, the first judge entered an order reserving decision on the motions pending the parties' participation in a post-judgment early settlement panel (ESP). The judge also suspended plaintiff's alimony obligation pendente lite. On November 19, 2019, an order was entered amending the October 10, 2019 order, which included a supplemental statement of facts and conclusions of law.

The first judge noted in the November 19, 2019 order that Article II, paragraph 5 of the MSA was ambiguous and could be interpreted to mean either: (1) the language created an exclusive list of changed circumstances permitting modification or (2) the language set forth a non-exhaustive list of certain foreseeable instances in which modification is warranted. The judge added:

> The [c]ourt finds that both parties' interpretations of the Agreement are colorable, and that Article II, paragraph 5 of the parties' MSA is sufficiently ambiguous to warrant a hearing to determine the parties' intent at the time of the [MSA]. The [c]ourt also finds that should the paragraph be determined to be nonexhaustive, then [p]laintiff has made a prima facie showing of change in circumstance under Lepis.[3]

---

[3] Lepis v. Lepis, 83 N.J. 139, 146 (1980).

A-2775-21

The judge emphasized "plaintiff's unemployment and reduced income . . . clearly constitute[d] a change of circumstances warranting a modification of plaintiff's alimony obligation."

The matter was not resolved at the ESP. The parties also attempted to privately mediate their disputes without success. Defendant moved for reconsideration of the October 10 and November 19, 2019 orders. Plaintiff opposed defendant's motion for reconsideration and cross-moved for limited discovery and for a plenary hearing. At the motion hearing held on February 21, 2020, plaintiff reiterated the MSA incorporated New Jersey statutory and case law permitting modification or termination of alimony based upon loss of employment or a decrease in income—whether or not the MSA expressly stated that—and the MSA had no express anti-Lepis clause.

Plaintiff further argued paying $85,000 per year in alimony based on his current $100,000 per annum income was unreasonable, especially in light of the fact that defendant's gross income rose to $85,179 in 2019. Plaintiff's CIS revealed his gross income for 2020 was $90,882. Thus, the parties had almost the same earned income amounts. Plaintiff maintained his income was reduced by over 75% from his income at the time of the divorce, and he used a "mathematical formula" to pay 20% of his gross income as alimony, which was

A-2775-21

the equivalent percentage of his income used in the MSA. Defendant asserted she limited her ability to seek increases in alimony because "it was more valuable to [her] to receive guaranteed payments to ensure security for [her] future . . . ."

On February 25, 2020, the first judge entered an order denying defendant's motion for reconsideration. The judge referred the parties to another post-judgment ESP, directed defendant to file a CIS, and permitted the parties to engage in limited discovery relating to their disputed interpretations of the MSA as it pertained to alimony and alimony related obligations, such as life insurance, and ordered a plenary hearing. The February 25, 2020 order also required plaintiff to maintain a minimum $100,000 balance in his retirement account for six months to secure his alimony obligation.[4]

In June 2020, the venue was changed from Mercer to Burlington County.[5] A second judge was then assigned to the matter. Following motion practice, discovery was ordered on the issues to be addressed at the plenary hearing.

---

[4] Counsel confirmed at oral argument that the $100,000 remains in the account.

[5] Venue was changed because defendant's prior counsel had become a Superior Court judge and was serving as the presiding judge of the Family Part in Mercer County. Defendant's counsel sought to depose the judge.

A-2775-21

Counsel for both parties agreed to serve written deposition questions in lieu of oral examinations under oath on both parties' former attorneys. In response to certain written questions, plaintiff's former attorney stated there was no anti-Lepis clause regarding plaintiff in the MSA drafts or final MSA, but there was an anti-Lepis clause pertaining to defendant. Plaintiff's prior attorney also indicated in another written response that Article II, paragraph 5 of the MSA barred defendant from modifying the alimony provision, but there was no such reciprocal language against plaintiff.

Defendant's prior attorney responded to a written question about whether she advised defendant to limit the amount of support she received if plaintiff could return to court "for any reason to reduce alimony." Her response was, "I do not recall any specific discussions with [defendant] about accepting a lower amount of alimony in exchange for limiting [plaintiff's] ability to come back to court to reduce his alimony in the future." Regarding a question involving former defense counsel's drafting of settlement agreements in other matrimonial cases, she responded, "there does not necessarily need to have a Lepis provision actually included in the MSA, there just has to be a substantial change in circumstances." Neither of the parties' former attorneys indicated there was an anti-Lepis clause applicable to plaintiff, and no draft of the MSA precluded him

from filing a motion to terminate or modify his alimony obligation based on substantially changed circumstances.

Plaintiff served a vocational expert report prepared by Dr. Lynn Levine. In Dr. Levine's opinion, plaintiff attempted employment in his prior field, and he was working up to his earning capacity—$98,000 to $100,000 per year. Defendant did not serve a rebuttal vocational report. Plenary hearing dates were scheduled for June and July 2021.

On April 19, 2021, plaintiff filed another motion seeking to re-open the parties' MSA pursuant to Rule 4:50-1(f) and to terminate his alimony obligations based on his claim that defendant defrauded him out of $19,000,[6] which he alleged she concealed at the time of the divorce. According to plaintiff, he was "recently" provided information from the parties' daughter and defendant's sister, who certified defendant gave her cash after grocery shopping to surreptitiously deposit into the sister's account. Defendant opposed the motion and filed a notice of cross-motion for summary judgment seeking to deny plaintiff's motion in its entirety.

Since discovery had been completed, the second judge expressed that a plenary hearing might be unnecessary if both counsel agreed that the pending

---

[6] The record also shows the amount was as high as $38,509.83.

motions could be decided on the papers. The parties dispute what occurred on this issue. On appeal, plaintiff's counsel contends his client did not waive the plenary hearing as to all issues and all motions. Defendant's counsel does not challenge the judge's suggestion to decide the motions on the papers without conducting a plenary hearing. In any event, written submissions were provided to the second judge in June 2021 addressing all pending motions, and no plenary hearing was conducted.

In his written statement of reasons, the second judge determined that "although the [first judge] has already found that Article II, paragraph 5 of the parties' MSA was on its face ambiguous, as set forth above, the evidence in the motion record provided an appropriate basis for the court to make determinations on the substantive issues presented on the parties' motions." The judge noted Article II, paragraph 5 states plaintiff's alimony obligation "shall continue and will not be terminated absent the occurrence of any of the events specified by the parties" in the MSA. In light of his interpretation, the judge denied plaintiff's motion to terminate his alimony obligation based upon his unemployment and substantially reduced financial circumstances.

But, the judge recognized plaintiff's motion to modify alimony was "somewhat less straightforward." During the discovery phase of the case, the

12

judge considered the "probative evidence of the parties' intentions" on the alimony modification issue stemmed from "revisions to the MSA exchanged between [former] counsel." The judge reviewed the drafts to the MSA provided in discovery and concluded the evolution of the MSA drafts reflected the parties contemplated language that would have enabled plaintiff to seek a modification of his alimony obligation based upon changed circumstances, but "the parties agreed to omit that provision" from the MSA. The judge concluded modification of the agreed upon spousal support was solely limited to "retirement or disability."

The judge acknowledged the MSA did not contain an express anti-Lepis clause and found Article II, paragraph 5 "was intended to be exhaustive" as to plaintiff's ability to "renegotiate" his alimony obligation. The judge acknowledged the "ambiguity" in the wording of the MSA, but nevertheless determined that Article II, paragraph 5 precludes plaintiff from seeking to modify his alimony obligation on the basis of unemployment and reduced income. Citing Rule 4:46-2(c), the judge granted defendant's cross-motion for summary judgment, finding Article II, paragraph 5 was "on its face ambiguous," but found "the evidence in the motion record provided a basis for him to

determine the substantive issues," ordered plaintiff to resume paying $85,000 per year in alimony, and determined arrears were $175,382.[7]

Regarding plaintiff's Rule 4:50-1(f) motion to re-open the MSA, the judge emphasized plaintiff sought to set aside an MSA "over sixteen years later" based on defendant's sister's statement without any corroborating evidence to support her allegations. Given the "composition of the marital estate," the judge was unpersuaded that plaintiff's alimony obligation would have been different. The judge denied the Rule 4:50-1(f) motion without prejudice. This ruling is not challenged on appeal.

On the issue of counsel fees, the judge denied plaintiff's request without prejudice and granted defendant's request in part. The judge awarded defendant $51,823.50—one-half the amount she requested—after considering the parties' financial conditions, the results obtained, and the enforcement nature of the proceedings. Memorializing orders were entered. This appeal ensued.

Plaintiff presents the following arguments for our consideration:

> (1) the second judge improvidently set aside the law of the case established by the first judge without applicable facts;

---

[7] On May 4, 2022, the judge entered a uniform support order indicating arrears to be $240,824.47.

(2) a plenary hearing was required because the intent of the parties is the main issue;

(3) plaintiff's request to modify or terminate alimony was grounded in equity and fairness; and

(4) defendant has unclean hands.

## II.

The decision of the Family Part judge to modify alimony is reviewed under an abuse of discretion standard. Larbig v. Larbig, 384 N.J. Super. 17, 21 (App. Div. 2006). "Whether an alimony obligation should be modified based upon a claim of changed circumstances rests within a Family Part judge's sound discretion." Ibid. Each individual motion for modification is particularized to the facts of that case, and "the appellate court must give due recognition to the wide discretion which our law rightly affords to the trial judges who deal with these matters." Ibid. (quoting Martindell v. Martindell, 21 N.J. 341, 355 (1956)).

As such, the appellate court may not disturb the Family Part's decision on alimony unless it concludes that the Family Part "clearly abused its discretion, failed to consider all of the controlling legal principles, or must otherwise be well satisfied that the findings were mistaken or that the determination could not reasonably have been reached on sufficient credible evidence present in the

record after considering the proofs as a whole." Heinl v. Heinl, 287 N.J. Super. 337, 345 (App. Div. 1996).

The same standard of review applies to a Family Part's determination regarding the need for a plenary hearing. Costa v. Costa, 440 N.J. Super. 1, 4 (App. Div. 2015). Conversely, "all legal issues are reviewed de novo." Ricci v. Ricci, 448 N.J. Super. 546, 565 (App. Div. 2017). We review de novo questions of law. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). The "interpretation and construction of a contract is a matter of law for the court subject to de novo review." Steele v. Steele, 467 N.J. Super. 414, 440 (App. Div. 2021) (quoting Fastenberg v. Prudential Ins. Co. of Am., 309 N.J. Super. 415, 420 (App. Div. 1998)).

"Alimony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with "a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage."'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). Alimony is generally set based on the marital standard of living and contemplates the "continued maintenance at the standard of living [the dependent spouse] had become accustomed to prior to the separation." Lepis, 83 N.J. at 150 (quoting Khalaf v. Khalaf, 58 N.J. 63, 69

(1971)). Alimony "may be revised and altered by the court from time to time as circumstances may require" pre- and post-judgment. N.J.S.A. 2A:34-23.

Plaintiff argues because the first judge found Article II, paragraph 5 of the MSA was ambiguous and that he made a prima facie showing of changed circumstances, the second judge was bound under the law-of-the-case doctrine to conduct a plenary hearing, which was ordered by the first judge. And, in any event, a plenary hearing is necessary based on the parties' competing certifications. We agree.

The law-of-the-case doctrine "is a non-binding rule intended to 'prevent relitigation of a previously resolved issue.'" State v. K.P.S., 221 N.J. 266, 276 (2015). The rule acts to preclude a court from re-examining an issue already decided by the same court in the same case. Ibid. While the doctrine is discretionary, it does call on the court to balance the value of judicial deference against factors that bear on the search for truth and the pursuit of justice. Ibid. Prior decisions should be followed unless "there is substantially different evidence at a subsequent trial, new controlling authority, or the view expressed previously was clearly erroneous." Daniel v. State, Dept. of Transp., 239 N.J. Super. 563, 582 (App. Div. 1990).

A-2775-21

To modify an alimony obligation, a movant has the burden of demonstrating a prima facie case of changed circumstances before the court orders discovery, full financial disclosure, or a plenary hearing. Lepis, 83 N.J. at 157-59. The Lepis Court determined that alimony and support orders only represent the present obligations of the former spouses, and those obligations "are always subject to review and modification on a showing of changed circumstances."

The Court then listed multiple examples of sufficient changed circumstances that warrant modification: (1) an increase in the cost of living; (2) increase or decrease in the supporting spouse's income; (3) illness, disability or infirmity arising after the original judgment; (4) the dependent spouse's loss of a house or apartment; (5) the dependent spouse's cohabitation with another; (6) subsequent employment by the dependent spouse; and (7) changes in federal tax law. Id. at 151.

The party seeking modification must make a prima facie showing of changed circumstances that warrant modification. Id. at 157. After a showing has been made, the court must determine how much to modify the alimony or support obligation. Id. at 157-58. A court may need to hold a hearing before

18

modifying support if it determines there are any material facts in dispute. Id. at 159. Here, the parties' MSA did not contain an anti-Lepis clause.

"When [a] movant is seeking modification of an alimony award, that party must demonstrate that changed circumstances have substantially impaired the ability to support himself or herself." Id. at 157. There are a number of changed circumstances that may warrant a modification of an alimony obligation, such as "an increase or decrease in the income of the supporting or supported spouse." Quinn, 225 N.J. at 49 (quoting J.B. v. W.B., 215 N.J. 305, 327 (2013)).

A moving party "may make a prima facie showing of changed circumstances . . . by citing a combination of changes . . . of both parties[,] which together have altered the status quo [that] existed at the time of the entry of the support order under review." Donnelly v. Donnelly, 405 N.J. Super. 117, 131 (App. Div. 2009) (quoting Stamberg v. Stamberg, 302 N.J. Super. 35, 42 (App. Div. 1997)). "[T]he changed-circumstances determination must be made by comparing the parties' financial circumstances at the time the motion for relief is made with the circumstances which formed the basis for the last order fixing support obligations." Beck v. Beck, 239 N.J. Super. 183, 190 (App. Div. 1990). Here, plaintiff established a prima facie case of changed circumstances.

However, courts acknowledge that income earned through employment "is not the only measure of the supporting spouse's ability to pay that should be considered by a court." Miller v. Miller, 160 N.J. 408, 420 (1999). Courts can and should also consider other factors, including "[r]eal property, capital assets, investment portfolio[s], and capacity to earn by 'diligent attention to . . . business.'" Id. at 420-21 (third alteration in original) (quoting Innes v. Innes, 117 N.J. 496, 503 (1990)).

Plaintiff claims the second judge should have followed the first judge's order for a plenary hearing to be conducted to determine the parties' intent on the issue of alimony when the MSA was negotiated and executed to resolve ambiguities inherent in the MSA. The discovery exchanged and written deposition questions and answers provided by the parties' former attorneys illuminate there is a genuine issue of material fact as to whether plaintiff waived his right to seek a modification or termination of his alimony obligation. Moreover, plaintiff's prior counsel represented that the final version of the MSA contained an anti-Lepis clause only as to defendant and not plaintiff.[8] And, the

---

[8] A parties' settlement agreement or subsequent consent order may reasonably limit the circumstances that may qualify as "changed" by including an anti-Lepis clause. See Quinn, 225 N.J. at 49-50. Anti-Lepis clauses are subject to enforcement where the parties "with full knowledge of all present and

MSA contains language barring defendant from seeking a modification of alimony but no reciprocal language is found in the MSA regarding plaintiff's ability to modify his alimony obligation other than the two circumstances delineated in Article II, paragraph 5—retirement and physical or mental disability. This is an inherent ambiguity and inconsistency in the MSA, which requires a plenary hearing.

A plenary hearing should be ordered "where the affidavits show that there is a genuine issue of material fact." Murphy v. Murphy, 313 N.J. Super. 575, 58 (App. Div. 1998). A dispute of material fact is one that "bear[s] directly on the legal conclusions required to be made and [such] disputes can only be resolved through a plenary hearing." Spangenburg v. Kolakowski, 442 N.J. Super. 529, 540-41 (App. Div. 2015).

Plaintiff points out conflicting material facts that "bear directly on the legal conclusions required to be made." Ibid. For example, Article V, paragraph

_____

reasonably foreseeable future circumstances bargain[ed] for a fixed payment or establish[ed] the criteria for payment[,] ... irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993). The Family Part will not unnecessarily or lightly disturb such arrangements if the arrangements are "fair and definitive." Quinn, 225 N.J. at 44 (quoting Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)).

established that plaintiff's obligation to maintain life insurance is "subject to modification when alimony is received," which he contends implies modification would be open-ended and reviewable as this particular provision has no precondition limiting when alimony could be revisited. Plaintiff also contends Article XI, paragraph 1 states that "other than upon a showing of substantially changed circumstances, neither party [. . .] shall seek alimony or support contrary to the provisions of this Agreement." Thus, the parties arguably intended for the "substantial change of circumstances" test to apply to both of them in the context of their alimony agreement, warranting a plenary hearing.

In addition, Article II, paragraph 5 provides that payments may be "renegotiated" based on plaintiff's retirement or disability but does not address when or if he could seek a "modification" or "termination" of his alimony and related obligations. One implication of this omission is it was intentional. The drafters chose to mention one circumstance specifically, but not the other, which just as logically could have been mentioned. See e.g., In re Estate of Santolino, 384 N.J. Super. 567, 581 (Ch. Div. 2005) (applying the principle of inclusion unius est exclusion alterius, which means the inclusion of one excludes the other). This provision of the MSA does not explicitly identify that plaintiff's

22

alimony obligation is non-modifiable in the event of his changed financial circumstances or mention an express waiver of the modification rights granted by Lepis, 263 N.J. Super. at 240. Acceptance of the second judge's interpretation requires an overall application of Article II, paragraph 5 to all other alimony and alimony related provisions in the MSA, rather than simply limiting its application to the two conditions set forth in Article II, paragraph 5.

For these reasons, we conclude the law-of-the-case doctrine is applicable here, and we independently hold a plenary hearing is necessary even in the absence of the law-of-the-case doctrine to discern whether the parties exercised an informed waiver of the right to modify the amount of alimony. Not only are the parties' certifications at odds on the scope of waiver, but so are representations made on this issue by their prior attorneys who negotiated the MSA. The actual testimony of the parties, their former attorneys, and any other witnesses subject to cross-examination would ferret out the parties' understanding and intention. See 5 Wigmore, Evidence, § 1367 at 32 (Chadbourne ed. 1974) ("cross-examination is beyond any doubt the greatest legal engine ever invented for the discovery of truth.").

We remain mindful that plaintiff bears the burden of proving the parties' intent. Pacifico, 190 N.J. at 269. Further, if following the plenary hearing, the

judge concludes modification of the amount of alimony was not barred by the MSA, there remains a need to evaluate the parties' respective needs and abilities to pay prior to determining whether modification is warranted. Lepis, 83 N.J. at 152. Even if the MSA provisions are found to preclude modification, the judge must analyze whether, under the circumstances presented, enforcement remains reasonable. Morris, 263 N.J. Super. at 245.

In light of our decision, we see no reason to address plaintiff's additional arguments. Accordingly, we reverse the April 21, 2022 order, vacate the counsel fee award, and remand for a plenary hearing consistent with the reasons expressed in our opinion.

Reversed, vacated, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2775-21